663 F.2d 598
 Randy HARVILLE, Plaintiff-Appellee Cross-Appellant,
Argonaut Southwest Insurance Company, Intervenor-Appellee,
v.
ANCHOR-WATE COMPANY, Defendant-Appellee Cross-Appellant.
MATHIS MACHINERY COMPANY and Mid-Continent Pipeline
Equipment Company, Defendants, Third-Party
Plaintiffs-Appellants, Cross-Appellees,
v.
Dewey SMITH, Independent Executor For the Estate of Carl K.
Smith, Deceased, Third-Party Defendant-Appellee.
 No. 80-1872.
 United States Court of Appeals,
Fifth Circuit.
 Dec. 11, 1981.
 
 Atchley, Russell, Waldrop & Hlavinka, Howard Waldrop, Texarkana, Tex., for Mathis Mach. Co. and Mid-Continent.
 Young, Patton & Folsom, Nicholas H. Patton, Texarkana, Tex., for Randy Harville.
 Patterson, Lamberty & Kelly, Thomas Lawson Kelly, Jr., Dallas, Tex., for Argonaut.
 John B. Greer, III, Texarkana, Tex., for Anchor-Wate Co.
 Lynn Cooksey, Texarkana, Tex., for Dewey Smith.
 Appeals from the United States District Court for the Eastern District of Texas.
 Before GEE and RUBIN, Circuit Judges, and SPEARS*, District Judge.
 GEE, Circuit Judge:
 
 
 1
 On December 12, 1978, Randy Harville lost his right arm after becoming entangled in a large pipe-coating machine he was inspecting. The design and construction of this machine was initiated in 1973, when Anchor-Wate, a Texas corporation, contracted with Carl K. Smith, now deceased, sole proprietor of Mathis Machinery Company of Mathis, Texas, to design and build a pipe-coating machine. Effective April 1, 1974, Mid-Continent Pipeline Equipment Company ("Midcon"), another Texas corporation, purchased most of the assets of Mathis Machinery, including the pipe-coating machine. The machine was nearly completed, but Midcon added some accessories and tested the machine before shipping it 16 months later to the Anchor-Wate production facility in Belle Chasse, Louisiana. Anchor-Wate then placed the machine in production, where it operated for three years prior to this incident. In December 1978, a purchaser of Anchor-Wate's concrete-coated pipe contracted with an independent inspection company, Daniel, Mann, Johnson, Mendenhall Inspection Team, to insure that all specifications were met. Randy Harville was the inspection company employee assigned to check several aspects of the coated pipe.
 
 
 2
 The pipe-coating process used in this job called for each joint to be wrapped in a chicken-wire-type mesh and then coated with concrete to a certain thickness. At each end of a joint a certain length of pipe was to be left bare or uncoated so that the joints could be properly joined when put into use. This bare space is commonly referred to as the "cutback." The machine in question accomplished this process by holding each joint of pipe between two carriages, referred to as "buggies," which move laterally on a track and simultaneously rotate the pipe at a high speed on large rollers. As each piece of pipe passes the operator's stand, it is wrapped with wire and sprayed with concrete as it rotates. When the pipe and carriage assembly reach the end of the track, the coated pipe is removed from the assembly by a forklift and carried to a finishing area, where Anchor-Wate employees check the pipe, wash and, if necessary, shorten or lengthen the cutback, and make such minor repairs as are necessary.
 
 
 3
 By December 12, 1978, Randy Harville had been inspecting pipe for several days. To make certain that the length of the cutback area fell within the appropriate twelve- to fourteen-inch range, Harville was using a portion of an axe handle that had been cut to a length of thirteen inches and had a loop of cord attached to one end. With this stick in his hand and with the cord wrapped around his hand or wrist, Harville attempted to measure the cutback on a piece of pipe 36 inches in diameter and 40 feet long as it rotated on the carriage rollers and moved laterally down the track. He somehow became entangled in the machine, and his right arm was pulled in between the pipe and carriage rollers up to his shoulder socket. After the pipe had been removed by a forklift, Harville was taken to a nearby hospital where his arm was amputated.
 
 
 4
 On December 29, 1978, Harville instituted this action against Anchor-Wate for negligence and against Midcon and Mathis (now considered to be one) for strict liability in tort. Both defendants filed cross actions against each other, claiming rights of contribution and indemnity. Midcon thereafter instituted a third-party action against the Estate of Carl K. Smith for indemnity or contribution. At trial the court reserved until verdict a ruling on whether the substantive law of Texas or Louisiana should be applied to this diversity action. On March 5, 1980, the jury returned a verdict that contained the following findings of fact: (1) that defendant Anchor-Wate was guilty of negligence that was a proximate cause of plaintiff's injury; (2) that plaintiff was guilty of contributory negligence in the amount of fifteen percent that was a proximate cause of his injuries; (3) that at the time the concrete-coating machine in question left the possession of the defendant, Midcon, it was in a defective condition unreasonably dangerous to Randy Harville, that this condition was unchanged at the time of the accident, and that the condition was a producing cause of the accident; (4) that at the time the concrete-coating machine in question left the possession of Carl K. Smith, d/b/a Mathis Machinery Company, it was not in a defective condition unreasonably dangerous to Randy Harville; and (5) that plaintiff did not assume the risk of injury at the time of the accident. The jury further found damages in favor of plaintiff in the amount of $771,389.31. The court entered a judgment based on these findings on June 18, 1980, against defendant Midcon only, in the amount awarded. Simultaneously with the entry of this judgment, the court entered another order applying the law of the State of Louisiana to plaintiff's negligence action against Anchor-Wate. The remainder of the case was decided under Texas law. Since under Louisiana law at the time of the trial contributory negligence was an absolute bar to any recovery by Harville from Anchor-Wate, the defendant Midcon was allowed no right of contribution against Anchor-Wate.
 
 
 5
 Midcon raises several issues on appeal, including the trial court's alleged reversible error in applying Louisiana law to the negligence action and in refusing to submit an instruction on misuse to the jury. Midcon also claims that a conflict exists in the jury findings that the machine was not in a defective condition unreasonably dangerous when it left the possession of Carl K. Smith but that it was in a defective condition when it left the possession of Midcon. We conclude that the district court correctly applied Louisiana law but erred in refusing to submit an instruction on misuse. We therefore reverse the judgment against Midcon and remand for a new trial. We affirm, however, the finding that the machine was not in a defective condition unreasonably dangerous when it left the possession of Carl K. Smith.
 
 
 6
 I. The application of Louisiana law.
 
 
 7
 This case presented the district court with a choice of laws problem. The injury occurred in Belle Chasse, Louisiana. Harville resided in Louisiana at the time of the accident but was an Arkansas resident when the suit was filed. Defendants Anchor-Wate and Midcon are Texas corporations, although Anchor-Wate's production facility is located in Louisiana. The machine was manufactured in Texas, the forum state. To resolve this conflict of laws question, the district court was required to apply the "most-significant-relationships" test recently adopted as the Texas choice-of-laws rule. Gutierrez v. Collins, 583 S.W.2d 312, 318 (Tex.1979).[1] Because the action by Harville against Anchor-Wate is based on negligence and the alleged negligent acts causing the injury occurred in Louisiana, where the plaintiff then resided, it was reasonable for the court to conclude that Louisiana was the state with the most significant relationships to this portion of the case. Only when the district court's view of applicable state law is "against the more cogent reasoning of the best and most widespread authority" should this court reverse the judgment of the lower court. Stool v. J. C. Penney Co., 404 F.2d 562, 563 (5th Cir. 1968). Therefore, the trial court did not err in its application of Louisiana law to the negligence action against Anchor-Wate.
 
 
 8
 II. Misuse instruction.
 
 
 9
 Anchor-Wate pled the affirmative defense of misuse, offered evidence of potential misuse of the machine by Harville, and tendered an instruction and interrogatory on misuse. The trial court, however, did not submit an instruction or interrogatory on the plaintiff's misuse of the product, and defendants objected to the court's charge on this basis. The trial court submitted the case to the jury on special interrogatories pursuant to Fed.R.Civ.P. 49(a) and therefore was required to submit all material issues raised by the pleadings and evidence. Simien v. S. S. Kresge Co., 566 F.2d 551, 555 (5th Cir. 1978). Therefore, Anchor-Wate and Midcon argue that the trial court committed reversible error when the misuse instruction and interrogatory were not submitted to the jury. Harville argues that the defense of misuse is not applicable to this case and thus should not have been submitted to the jury.
 
 
 10
 The affirmative defense of misuse in products liability cases is recognized by Texas courts. General Motors Corp. v. Hopkins, 548 S.W.2d 344 (Tex.1977). In Hopkins the court defined misuse as "a use of a (product) in which it is mishandled in a way which the manufacturer could not have reasonably foreseen or expected in the normal and intended use of such (product)." Id. at 348 n.2. The rationale behind the misuse defense is that, although a manufacturer or supplier is liable for injuries caused by placing a dangerous product into the stream of commerce, his exposure should not be infinite. Product liability was never intended to take the place of insurance, and the manufacturer should not have to reimburse the plaintiff for damage caused by a use of the product that the manufacturer would not have foreseen and that plaintiff should have foreseen would create or increase the attendant danger. Id. at 351. Thus, the defense of misuse is asserted after a product is found to have been unreasonably dangerous, and this defect is found to be a producing cause of the injury. Then the defendant must establish that (1) the use or misuse of the product was neither intended nor reasonably foreseeable from the manufacturer's or supplier's perspective, (2) the plaintiff could reasonably foresee an injury occurring as a result of the misuse, and (3) the misuse was a producing cause of the injury. If the jury finds that these elements are present, it must then determine the respective percentages by which these two concurring causes contributed to bring about the event, thus reducing the plaintiff's recovery by the percentage that his misuse contributed to the injury.
 
 
 11
 In the case at bar, evidence was introduced that Harville's inspection job could have been and usually was done after the pipe coating was completed and not while the pipe was still rolling on the machine. Three witnesses testified that the cutback could not be measured while on the machine because the cutback is not complete until taken to the finishing area, being subject to final adjustment there. This is evidence that Harville's proximity to the machine for purposes of pipe inspection was not foreseeable. Further, Harville could have foreseen the danger to himself. An Anchor-Wate employee testified that she warned Harville that his inspection technique was dangerous, and Harville himself testified that he knew that the machine was dangerous. This evidence raises a fact issue as to misuse that should have been submitted to the jury.
 
 
 12
 Harville further questions the sufficiency of the tendered instruction concerning misuse,[2] contending that it does not state that the burden of proof is on the defendant. Midcon claims that they believed the court would submit a separate instruction on the burden of proof, and it appears that the requested interrogatory cures the instruction. See Houston v. Herring, 562 F.2d 347 (5th Cir. 1977). In any event, the requested instruction was sufficient to put the trial court on notice that the evidence raised an issue as to the plaintiff's misuse of the machine. Even if a requested instruction is not correct in every respect, it may impose upon the court a duty to submit a more specific instruction where such instruction is necessary for the defendant's affirmative defense. Ullman v. Overnite Transportation Co., 508 F.2d 676, 677 n.2 (5th Cir. 1975).[3] We thus find that the district court erred in failing to submit the issue of misuse to the jury.
 
 
 13
 III. Third-party action against Carl K. Smith.
 
 
 14
 The jury found that the incompleted machine was not unreasonably dangerous to the plaintiff when it left the hands of Carl K. Smith, Deceased, but found it to be unreasonably dangerous when the completed machine was introduced into the stream of commerce by Midcon. Midcon claims that the answers are in irreconcilable conflict because the machine's design was essentially completed when Midcon bought it from Smith. Where there is a view of the case that makes the jury's answers to special interrogatories consistent, they must be resolved that way. Atlantic & Gulf Stevedores, Inc. v. Ellerman Lines, 369 U.S. 355, 364, 82 S.Ct. 780, 786, 7 L.Ed.2d 798, 807 (1962). We therefore must attempt to reconcile the jury's finding before we are free to disregard its verdict. After examining the evidence, we find that the jury's answers are consistent with a reasonable view of the evidence. When Midcon purchased the machine it was inoperable, with no power source. Midcon did not complete construction of the machine until 16 months after the purchase from Smith. During that time Midcon added accessories and tested the machine. Smith never claimed that the machine was complete at the time of the sale to Midcon, and Midcon had ample opportunity to ameliorate any existing dangerous features. Texas courts require proof that the defendant released into the stream of commerce a product that is demonstrated at trial to have been defective. General Motors Corp. v. Hopkins, 548 S.W.2d at 351. Smith argues that he never intended the machine to be introduced into the stream of commerce prior to completion and testing by Midcon. We agree that the machine did not enter the stream of commerce at the time Midcon purchased it from Smith.[4]
 
 
 15
 Midcon further claims that the trial court erred by denying it indemnity or contribution against Dewey Smith, Independent Executor for the Estate of Carl K. Smith, Deceased. For Midcon to be entitled to indemnity against Smith it must prove that Smith breached a duty to Midcon, as required by application of the "imaginary lawsuit" test. Foster v. Ford Motor Co., 616 F.2d 1304, 1308 (5th Cir. 1980). Midcon alleges that Smith breached his duty by supplying Midcon with a defective machine. However, the jury reasonably found that the machine was not defective when supplied to Midcon, and there is no evidence of any other breach of duty. Therefore, the trial court correctly denied Midcon the right to indemnity against Smith.
 
 
 16
 Contribution among joint tortfeasors in Texas is statutory, and in order for Midcon to be entitled to contribution from the Estate of Carl K. Smith, Midcon must establish that Smith is liable to Harville. Tex.Rev.Civ.Stat.Ann. art. 2212 (Vernon 1971);[5] Foster v. Ford Motor Co., 616 F.2d at 1308. The jury specifically found that Smith had violated no duty to Harville.[6] Therefore, Midcon is allowed no right of contribution from Smith.
 
 
 17
 Because the court erred in failing to instruct the jury on misuse, the judgment against Midcon in favor of Randy Harville is reversed and remanded to the district court for a new trial. The court's judgment that Midcon had no right of indemnity or contribution against Dewey Smith, Independent Executor for the Estate of Carl K. Smith, is affirmed.
 
 
 18
 AFFIRMED in part, REVERSED and REMANDED in part.
 
 
 
 *
 Of the Western District of Texas, sitting by designation
 
 
 [1]
 The most-significant-relationships test as adopted by the Supreme Court of Texas is enumerated in §§ 6 and 145 of the Restatement (Second) of Conflict of Laws. Section 6 sets out the general principles by which the more specific rules are to be applied. It states:
 § 6. Choice-of-Law Principles
 (1) A court, subject to constitutional restrictions, will follow a statutory directive of its own state on choice of law.
 (2) When there is no such directive, the factors relevant to the choice of the applicable rule of law include
 (a) the needs of the interstate and international systems,
 (b) the relevant policies of the forum,
 (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,
 (d) the protection of justified expectations,
 (e) the basic policies underlying the particular field of law,
 (f) certainty, predictability and uniformity of result, and
 (g) ease in the determination and application of the law to be applied.
 Section 145 lists factual matters to be considered when applying the principles of section 6 to a tort case:
 § 145. The General Principle
 (1) The rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties under the principles stated in § 6.
 (2) Contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:
 (a) the place where the injury occurred,
 (b) the place where the conduct causing the injury occurred,
 (c) the domicil, residence, nationality, place of incorporation and place of business of the parties, and
 (d) the place where the relationship, if any, between the parties is centered.
 These contacts are to be evaluated according to their relative importance with respect to the particular issue.
 
 
 [2]
 The defendants requested the following instruction and interrogatory on misuse:
 Defendant's requested instruction:
 The Defendants herein contend that the Plaintiff's injuries occurred as the proximate result of his misuse of the product. A manufacturer or seller is entitled to expect a normal use of his product. If Plaintiff's injury occurred because of a use of the product in a manner for which the product is not intended, and such use is not reasonably foreseeable to the Defendants, then there has been a misuse or abuse, or a use in a manner not reasonably foreseeable. The manufacturer is not liable so long as the product is safe for its foreseeable use.
 Defendant's requested interrogatory:
 Do you find from a preponderance of the evidence that Plaintiff, Randy Harville, misused the pipe coating machine or used it in a manner which the manufacturer could not reasonably have foreseen or expected in the normal and intended use of such pipe coating machine and that such misuse, if any, was a proximate cause of the occurrence in question?
 
 
 [3]
 To be distinguished are situations such as that found in Barrera v. E. I. du Pont de Nemours & Co., 653 F.2d 915 (5th Cir. 1981), where the requested instruction is what may be termed substantively defective; that is, it advances as a defense that which is not, and on the evidence could not, be one. There the defense defined in the submitted instruction required that two elements be established, and there was evidentiary support for only the first element, as admitted by both parties. No jury charge, however articulated, could have presented both elements of that defense to the jury, because one essential element was simply not present in the case. Here, by contrast, there is evidence on all elements of the misuse defense, and the defect, if any, in the requested instruction is technical only
 
 
 [4]
 See Armstrong Rubber Co. v. Urquidez, 570 S.W.2d 374, 376 (Tex.1978). Plaintiff was denied recovery because the defendant was testing its product, and it had not entered the stream of commerce
 
 
 [5]
 Art. 2212. Contribution between tort feasors
 Any person against whom, with one or more others, a judgment is rendered in any suit on an action arising out of, or based on tort, except in causes wherein the right of contribution or of indemnity, or of recovery, over, by and between the defendants is given by statute or exists under the common law, shall, upon payment of said judgment, have a right of action against his co-defendant or co-defendants and may recover from each a sum equal to the proportion of all of the defendants named in said judgment rendered to the whole amount of said judgment. If any of said persons co-defendant be insolvent, then recovery may be had in proportion as such defendant or defendants are not insolvent; and the right of recovery over against such insolvent defendant or defendants in judgment shall exist in favor of each defendant in judgment in proportion as he has been caused to pay by reason of such insolvency.
 
 
 [6]
 The trial judge submitted to the jury Interrogatory No. 3, inquiring of it:
 Do you find from a preponderance of the evidence that at the time the concrete coating machine in question left the possession of Carl Smith, it was in a defective condition, unreasonably dangerous to Randy Harville and that the concrete coating machine was expected to and did remain substantially unchanged from the condition in which it was sold by Carl Smith until the time of the occurrence in question, and further that such defective condition, if any, was a producing cause of the occurrence in question?
 We do not.