Bernard E. **HUDDY**, Plaintiff–Appellant,

v.

**FRUEHAUF CORPORATION,**
Defendant–Appellee.

No. 91–2790
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

Feb. 18, 1992.
On Petition for Rehearing March 18, 1992.

Patrice M. Barron, Robert O'Conor, Jr., Houston, Tex., for B. Huddy.

Marily T. Hebinck, Royston, Rayzor, Vickery & Williams, Houston, Tex., for Fruehauf Corp.

Before GARWOOD, HIGGINBOTHAM and BARKSDALE, Circuit Judges.

PER CURIAM:

The sole issue raised on appeal is whether the magistrate erred in determining that the law of Michigan governed this tort case. Because we find that the magistrate erred in applying Michigan law, we reverse for a new trial under Texas law.

### I.

In 1984, appellant Bernard Huddy was injured when the truck he was driving overturned on a Georgia interstate highway. At the time of the accident, Huddy was a Texas resident who was employed as a driver by a Tennessee corporation. The trip during which he was injured began at a Dow Chemical plant in Texas and was scheduled to end in Georgia.

In September 1985, Huddy sued appellee Fruehauf Corporation, the manufacturer of the trailer which overturned, for personal injuries he suffered in the accident. Jurisdiction was based upon diversity of the parties. Fruehauf is a corporation with its principal place of business in Michigan.

Huddy alleged in his complaint that Fruehauf was liable for defective trailer design under both a negligence and a strict liability theory. In 1989, more than three years after the suit was instituted, Huddy moved from Texas to New Jersey. In 1990, Fruehauf moved before the magistrate handling the case for a determination that Michigan law governs the case. Michigan law does not recognize a strict liability theory of recovery. The magistrate held that Michigan law applied and the case was tried to a jury on only the negligent design theory. Fruehauf prevailed at trial and Huddy timely appealed.

### II.

We review a district court's choice of law determination de novo. *Allison v. ITE Imperial Corp.*, 928 F.2d 137, 138 (5th Cir.1991). In a diversity case we look to the law of the forum state to determine which state law governs the case. *Klaxon v. Stentor Electric Manufacturing, Inc.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 1021–22, 85 L.Ed. 1477 (1941); *Pruitt v. Levi Strauss & Co.*, 932 F.2d 458, 461 (5th Cir.1991). Texas, the forum state here, has adopted the "most significant relationship" approach to choice of law, as detailed in Restatement (Second) of Conflict of Laws. *Duncan v. Cessna Aircraft Co.*, 665 S.W.2d 414, 421 (Tex.1984).

There is no dispute that there is a true conflict between the laws of Michigan and Texas as they relate to the core issue in this case. Texas law allows recovery against manufacturers under a strict liability theory for personal injury while Michigan law requires negligence. *See Duncan v. Cessna Aircraft Co.*, 665 S.W.2d 414 (Tex.1984); *Prentis v. Yale Manufacturing Co.*, 421 Mich. 670, 365 N.W.2d 176 (1984). In fact, of all the states that have even a slight interest in this case, Michigan appears to be the only one which would

not recognize Huddy's strict liability theory.[1]

Although we cannot discern conclusively from the record the rationale for the magistrate's determination that Michigan law applies to this case, it appears to be based largely on Huddy's 1989 move to New Jersey. Fruehauf argued below and in this court that because Huddy is no longer a Texas resident, Texas has no significant interest in this case. We disagree. Huddy's move more than three years after suit was filed should not be determinative in the choice of law analysis.[2]

Texas has evinced a strong interest in protecting its residents from personal injury caused by defective products. At the time of this accident Huddy was within that protected group. For more than three years after the accident, he remained a Texas resident. He was paid thousands of dollars in workers' compensation payments as a result of this accident while he was still a Texas resident. Texas does not lose its interest in this case because Huddy is no longer a resident. *See American Home Assurance Company v. Safway Steel Products*, 743 S.W.2d 693 (Tex.App.—Austin 1987) (Texas still has interest in case although Texas plaintiffs had already been compensated).

The fact that this question arises at all is testimony to the slow pace of justice in today's courts. More than six years elapsed between the accident and the court's decision regarding the appropriate choice of law. To hold that Texas loses its interest in this case because Huddy chose to move to another state during the litigation process would chain litigants to the state of residence at the time of the accident lest they lose the protection of its laws. Therefore, we will analyze the interests of the various states as they existed before Huddy moved to New Jersey.

Even after we conclude that Texas' interest should be measured before Huddy's move, this case is difficult to resolve under the "most significant relationship" analysis of the Restatement. Restatement (Second) of Conflict of Laws § 145 sets out four factors to be considered in determining which state has the most significant relationship to the issue: the place where the injury occurred; the place where the conduct causing the injury occurred; domicil, residence, place of incorporation or place of business of the parties, and the place where the relationship between the parties is centered.

The injury in this case took place in Georgia. Both parties have indicated that the location of the wreck was fortuitous and that Georgia has no other interest in this case. Therefore, although in most cases the place of injury will be an important factor in determining which law to apply, Georgia's interest in this case does not appear compelling. In any event, Georgia and Texas law both recognize strict liability as asserted by Huddy (*see* note 1, *supra*), which is the point of conflict here.

The place where the conduct causing the injury occurred is uncertain. Fruehauf would have us put much weight on this factor. However, Fruehauf must concede in its brief that where the truck was designed is unknown. Therefore, Fruehauf argues, the place where the harmful conduct occurred is Fruehauf's main office in Michigan where the plan must have been approved. Under Texas law, where as here there is no evidence in the record as to the place of design, this factor is simply to no effect. *Crisman v. Cooper Industries*, 748 S.W.2d 273, 277 (Tex.App.—Dallas 1988). We are unwilling to accord much weight to the place of the design's final approval, which amounts to nothing more than double-counting the manufacturer's principal place of business.

Other factors which Texas courts have used to evaluate the place of the conduct causing harm do not help resolve this ques-

---

**1.** *See Center Chemical Co. v. Parzini*, 234 Ga. 868, 218 S.E.2d 580 (1975); *Webb v. Zern*, 422 Pa. 424, 220 A.2d 853 (1966).

**2.** *See* Restatement (Second) of Conflict of Laws, Introductory Notes to § 145 (indicating that changes in domicile after suit is filed should very seldom affect analysis); *Harville v. Anchor–Wate Co.*, 663 F.2d 598, 601–02 (5th Cir. 1981) (giving weight to fact that plaintiff was Louisiana resident when accident occurred although he moved to Arkansas before suit was filed).

tion. In *Crisman,* the court recognized that even in a design case "mere design or manufacture of a defective product is not actionable." *Id.* Therefore, we should also consider the place of manufacture and the place of entry into the stream of commerce. Unfortunately, the place of manufacture was Pennsylvania, and the truck entered the stream of commerce in Tennessee. Thus, the place of the conduct causing the harm does not help us choose Michigan or Texas law.

The third factor we consider is the domicile, residence or place of business of the parties. As discussed above, Huddy was a Texas resident at all relevant times. Fruehauf is a corporation incorporated in and with its principal place of business in Michigan. The fourth factor, the place where the relationship between the parties is centered has no effect in this case.

We are left then with two states which have a party as a resident. Because neither state's contact with this case is clearly more significant, we must look to the strength of the state policies underlying the conflict. Texas has a strong commitment to protecting its residents from defective and dangerous products. *See Mitchell v. Lone Star Ammunition, Inc.,* 913 F.2d 242, 249 (5th Cir.1990) ("The Texas legislature and courts have developed an almost paternalistic interest in the protection of consumers."). Michigan has an opposing policy of protecting its resident manufacturers and designers from excessive liability to injured plaintiffs. *Pruitt,* 932 F.2d at 462. Texas courts have accorded little weight to the manufacturer's place of business in this context. In particular, the Texas courts have not based their choice of law upon the manufacturer's principal place of business where the allegedly defective product was not manufactured, designed, or placed into the stream of commerce in that state. *Crisman,* 748 S.W.2d at 277. The mere fact that Fruehauf's corporate offices are located in a state which does not recognize strict liability does not outweigh Texas's interest in protecting its residents. We conclude that Texas courts would apply Texas law in this case. Accordingly, we VACATE the judgment of the district court and REMAND for a new trial.

## ON PETITION FOR REHEARING

March 18, 1992.

PER CURIAM:

IT IS ORDERED that the petition for rehearing filed in the above entitled and numbered cause be and the same is hereby denied, except we remand this case for trial of the claim under Texas principles of strict liability, and not for trial of the claim of negligence. The latter has been tried. There is no suggestion of a conflict between the law of negligence in Michigan and the law of negligence in Texas.