**Glenn Martin GREENWELL and The City of Texarkana, Arkansas, Appellants,**

v.

**April Nicole Brown DAVIS, Appellee.**

No. 06–05–00079–CV.

Court of Appeals of Texas, Texarkana.

Submitted Oct. 19, 2005.

Decided Nov. 22, 2005.

Ned A. Stewart, Jr., Autrey, Autrey & Stewart, Texarkana, for appellants.

E. Ben Franks, Law Office of E. Ben Franks, Texarkana, for appellee.

Before MORRISS, C.J., ROSS and CARTER, JJ.

## OPINION

Opinion by Justice CARTER.

The City of Texarkana, Arkansas, and Glenn Martin Greenwell appeal the trial court's denial of their joint motion for partial summary judgment based on sovereign immunity under Arkansas law. The squad car being driven by Greenwell, an on-duty police officer with the City of Texarkana, Arkansas, and a vehicle driven by April Nicole Brown Davis collided on the Texas side of State Line Avenue. The City and Greenwell raise two issues on appeal: 1) Do the City and Greenwell have standing to bring an interlocutory appeal based on the denial of their motion for summary judgment? and 2) Did the trial court err in refusing to grant the motion for summary judgment based on sovereign immunity and official immunity under Arkansas law? Because we answer each of these questions in the affirmative, we reverse the judgment of the trial court.

State Line Avenue is a major thoroughfare in the City of Texarkana, which straddles the border between Texas and Arkansas. The northbound lanes of State Line Avenue are in Arkansas, but the southbound lanes are in Texas. On March 15, 2002, Davis' and Greenwell's vehicles collided on the Texas side of State Line Avenue. At the time of the collision, Greenwell was acting in the scope of his employment as a police officer with the City. Davis filed suit in Texas against the City of Texarkana, Arkansas, and Greenwell alleging that the negligent conduct of Greenwell caused the collision and alleging that her damages exceeded $500,000.00. The City filed a motion for partial summary judgment alleging that Arkansas sovereign immunity should be applied through the doctrine of comity. According to the City, Arkansas law waives sovereign immunity only for the amount covered by liability insurance. See ARK.CODE ANN. § 21–9–301 (2005). The trial court found that applying the Arkansas statute would violate Texas public policy and denied the motion for partial summary judgment.

We first examine the doctrines of sovereign immunity and comity. We then address whether we have jurisdiction to hear this interlocutory appeal. We conclude we have jurisdiction over both the City's and Greenwell's appeals. Next, we discuss

what standard of review should govern our analysis and hold that we should review de novo the trial court's decision. We then consider whether the Full Faith and Credit Clause requires us to recognize Arkansas law. Because both states have significant contacts with the transaction, the United States Constitution does not require Texas to recognize Arkansas law if that law violates Texas public policy. Last, we consider whether the trial court erred in concluding that the Arkansas sovereign immunity law is contrary to Texas public policy. Given the policy of promoting amicable relationships by recognizing a sister state's law, the extent of the difference in the laws is not so contrary to Texas public policy that we should refuse to enforce the Arkansas law.

## I. Sovereign Immunity Doctrine

■ The doctrine of sovereign immunity,[1] as developed at common law, originated in the feudal system. *Nevada v. Hall,* 440 U.S. 410, 414–15, 99 S.Ct. 1182, 59 L.Ed.2d 416 (1979). The doctrine rested on the fiction that the "King could do no wrong." *Id.* at 415, 99 S.Ct. 1182. This fiction has, of course, been rejected, but the doctrine of sovereign immunity, or governmental immunity, continues to be recognized under the common law. Concerning this doctrine, Alexander Hamilton wrote, "It is inherent in the nature of sovereignty not to be amenable to the suit of an individual *without its consent.*" THE FEDERALIST No. 81 (Alexander Hamilton). As explained by Justice Holmes, sovereign immunity rests "on the logical and practical ground that there can be no legal right as against the authority that makes the law on which the right depends." *Hall,* 440 U.S. at 415–16, 99 S.Ct. 1182 (quoting *Kawananakoa v. Polyblank,* 205 U.S. 349, 353, 27 S.Ct. 526, 51 L.Ed. 834 (1907)); *see Hosner v. De Young,* 1 Tex. 764, 769 (1846). In addition, sovereign immunity is justified based on the concern that suits against a state would deplete the state's financial resources necessary to operate the government. *See Wichita Falls State Hosp. v. Taylor,* 106 S.W.3d 692, 695 (Tex.2003). "Most sovereigns have long since abandoned the fiction that governments and their officials can 'do no wrong.' To varying degrees, states and the federal government have voluntarily relinquished the privilege of absolute immunity by waiving immunity in certain contexts." *Id.* Both Texas and Arkansas have enacted statutes which grant limited waivers of sovereign immunity.

### A. Arkansas Partial Waiver of Immunity

■ Arkansas has waived sovereign immunity only to the extent that the governmental entity's liability is covered by liability insurance. Section 21–9–301 of the Arkansas Code provides:

(a) It is declared to be the public policy of the State of Arkansas that all counties, municipal corporations, school districts, special improvement districts, and all other political subdivisions of the state and any of their boards, commissions, agencies, authorities, or other governing bodies shall be immune from liability and from suit for damages except to the extent that they may be covered by liability insurance.

---

1. Under the common law, there are two types of sovereign immunity: "(1) immunity from suit without consent even though there is no dispute as to liability of the sovereign; and (2) immunity from liability even though consent to the suit has been granted." *Mo. Pac. R.R.* *Co. v. Brownsville Navigation Dist.,* 453 S.W.2d 812, 813 (Tex.1970). We note that the City is not alleging it is immune from suit, only that it is immune from liability except to the extent its liability is covered by insurance.

(b) No tort action shall lie against any such political subdivision because of the acts of its agents and employees.

ARK.CODE ANN. § 21–9–301. Section 21–9–301 is a limited waiver of sovereign immunity. *City of Caddo Valley v. George*, 340 Ark. 203, 9 S.W.3d 481, 484–85 (2000). The statute covers municipal officers and employees acting in the scope of their employment, as well as the municipalities themselves. *Autry v. Lawrence*, 286 Ark. 501, 696 S.W.2d 315, 316 (1985); *Matthews v. Martin*, 280 Ark. 345, 658 S.W.2d 374, 375 (1983). Under Arkansas law, recovery in this case is limited to $20,000.00.[2]

**B. Texas Partial Waiver of Immunity**

■ Texas also has a limited waiver of sovereign immunity for negligence in the use of motor-driven equipment. The Texas Tort Claims Act provides in pertinent part:

A governmental unit in the state is liable for:

(1) property damage, personal injury, and death proximately caused by the wrongful act or omission or the negligence of an employee acting within his scope of employment if:

(A) the property damage, personal injury, or death arises from the operation or use of a motor-driven vehicle or motor-driven equipment; and

(B) the employee would be personally liable to the claimant according to Texas law; and....

TEX. CIV. PRAC. & REM.CODE ANN. § 101.021 (Vernon 2005). Liability of a Texas municipality under the Texas Tort Claims Act is limited to $250,000.00 for each person, $500,000.00 for each single occurrence for bodily injury and death, and $100,000.00

for each single occurrence for injury to or destruction of property. TEX. CIV. PRAC. & REM.CODE ANN. § 101.023(c) (Vernon 2005). Under Texas law, official immunity protects a government employee from liability when the employee is (1) acting in the scope of his or her employment, (2) performing a discretionary duty, and (3) acting in good faith. *Univ. of Houston v. Clark*, 38 S.W.3d 578, 580 (Tex.2000); *see Victory v. Faradineh*, 993 S.W.2d 778, 780–81 (Tex.App.-Dallas 1999, no pet.); *City of Wichita Falls v. Norman*, 963 S.W.2d 211, 216–17 (Tex.App.-Fort Worth 1998, pet. dism'd w.o.j.); *see also City of Houston v. Daniels*, 66 S.W.3d 420, 424–25 (Tex.App.-Houston [14th Dist.] 2001, no pet.).

**II. Doctrine of Comity**

■ Because the various states of our nation are, in many respects, entirely separate legal sovereignties, no state "can demand that its laws have effect beyond the limits of its sovereignty." *Gannon v. Payne*, 706 S.W.2d 304, 306 (Tex.1986). However, under the doctrine of comity, Texas will recognize the laws of other states with the expectation that those states will extend Texas the same consideration. *K.D.F. v. Rex*, 878 S.W.2d 589, 593–94 (Tex.1994). "Comity is a principle under which the courts of one state give effect to the laws of another state or extend immunity to a sister sovereign, not as a rule of law, but rather out of deference or respect." *N.M. v. Caudle*, 108 S.W.3d 319, 321 (Tex.App.-Tyler 2002, pet. denied).

**III. This Court has Jurisdiction over this Interlocutory Appeal**

■ In its first issue, Greenwell and the City argue they have standing to seek an

---

**2.** The City of Texarkana, Arkansas, is self-insured through the Arkansas Public Entities Risk Management Association and alleges that the insurance only covers the minimum

liability coverage required by law. For the purposes of this opinion, we will assume that coverage is limited to $20,000.00.

interlocutory appeal from the trial court's denial of their joint motion for partial summary judgment based on Arkansas sovereign immunity. This issue, though, is really whether this appeal concerns an appealable order rather than standing.[3] The City and Greenwell argue that Section 51.014 authorizes an interlocutory appeal of the trial court's order.

■ Generally, only final judgments of trial courts are appealable. *Lehmann v. Har–Con Corp.,* 39 S.W.3d 191, 195 (Tex. 2001); *Hinde v. Hinde,* 701 S.W.2d 637, 639 (Tex.1985); *North East Indep. Sch. Dist. v. Aldridge,* 400 S.W.2d 893, 895 (Tex.1966); *see* TEX. CIV. PRAC. & REM.CODE ANN. § 51.012 (Vernon 1997). The Legislature has, however, authorized the appeal of a number of interlocutory orders. *See, e.g.,* TEX. CIV. PRAC. & REM.CODE ANN. § 51.014 (Vernon Supp.2005). Section 51.014 of the Texas Civil Practice and Remedies Code provides as follows, in pertinent part:

> (a) A person may appeal from an interlocutory order of a district court, county court at law, or county court that:
>
> . . . .
>
> (5) denies a motion for summary judgment that is based on an assertion of immunity by an individual who is an officer or employee of the state or a political subdivision of the state; . . . .

TEX. CIV. PRAC. & REM.CODE ANN. § 51.014. The City and Greenwell argue that Section

51.014(a)(5) is not limited to Texas officers or employees.

■ If the statutory text is unambiguous, a court must adopt the interpretation supported by the statute's plain language unless that interpretation would lead to absurd results. *Tex. Dep't of Protective & Regulatory Servs. v. Mega Child Care, Inc.,* 145 S.W.3d 170, 177 (Tex.2004). The term "state" is not defined by Section 51 of the Texas Civil Practice and Remedies Code. However, the Code Construction Act defines "State" as "any state, district, commonwealth, territory, and insular possession of the United States and any area subject to the legislative authority of the United States of America." *See* TEX. GOV'T CODE ANN. § 311.005 (Vernon 2005). Further, we do not believe the word "the" changes the meaning of "state" in Section 51.014. Although "the" is singular, it does not necessarily limit the phrase "the state" to Texas. Therefore, we conclude the phrase "the state" includes Arkansas and an interlocutory appeal may be taken from the denial of Greenwell's motion.

Davis cites *City of Irving v. Pak,* 885 S.W.2d 189 (Tex.App.-Dallas 1994, writ dism'd w.o.j.), for the proposition that, if Section 51.014 applies to Arkansas police officers, the City is precluded from bringing an interlocutory appeal because its motion was not based on Greenwell's official immunity. Davis argues that the City's appeal is based on the trial court's refusal to apply Arkansas sovereign immunity under the doctrine of comity rather than on Greenwell's official immunity. In *Pak,* the Dallas Court of Appeals held the employ-

---

**3.** Standing, a necessary component of a court's subject-matter jurisdiction and a constitutional prerequisite to maintaining a suit under Texas law, requires the claimant to demonstrate a particularized injury distinct from that suffered by the general public. *Bland Indep. Sch. Dist. v. Blue,* 34 S.W.3d 547, 555–56 (Tex.2000); *Tex. Ass'n of Bus. v.*

*Tex. Air Control Bd.,* 852 S.W.2d 440, 444 (Tex.1993); *Rodgers v. RAB Inv. Ltd.,* 816 S.W.2d 543, 546 (Tex.App.-Dallas 1991, no writ). The argument of both parties focuses on whether the order being appealed is an appealable order rather than the contention that the City or Greenwell lack a personal stake in the controversy.

ees of the City of Irving could appeal the denial of their summary judgment motions, but the City of Irving could not appeal because the City's motion for summary judgment was not based on official immunity due to the acts of its employees. *Id.* at 193. Instead, the City of Irving asserted a separate claim of immunity that the plaintiffs did not meet the statutory requirements to sue the City. *Id.* (The incident was not based on the operation of a motor-driven vehicle or a condition or use of tangible or real property.) [4]

■ "A claim of governmental immunity may be based on an individual's assertion of official immunity and therefore fall within the ambit of section 51.014(5)." *Id.* at 191 (citing *City of Houston v. Kilburn,* 849 S.W.2d 810, 812 (Tex.1993)); *see Guevara,* 904 S.W.2d at 656 (interlocutory appeal allowed when the city's argument was based on official immunity).

■ The immunity asserted by the City of Texarkana, Arkansas, in its motion for partial summary judgment is based on the provisions of Section 21–9–301 of the Arkansas Code. *See* Ark.Code Ann. § 21–9–301. Under Section 21–9–301, an Arkansas municipality is immune from liability predicated on the negligent act of an employee committed in the performance of the employee's official duty. *Id.* The City argues that, because the immunity statute relied on by the City only applies when an employee is protected by official immunity, the City's motion is based on Greenwell's official immunity.[5] The negligent acts were allegedly committed by the City's employee while in the performance of his scope of employment. Because the immunity granted Arkansas employees is the functional equivalent of Texas official immunity, we conclude the City's argument is based on an assertion of official immunity. Therefore, the denial of the City's motion is an appealable order under Section 51.014(a)(5).

## IV. Standard of Review

■ Several Texas courts of appeals have held that a trial court's decision concerning comity should be reviewed for an abuse of discretion.[6] The Texas Supreme Court, though, has stated that it "will not defer to the trial court on matters involving relations between Texas and other sovereigns." *K.D.F.,* 878 S.W.2d at 593 (discussing the standard of review for mandamus concerning whether Kansas sovereign immunity should apply based on comity). We believe de novo review rests

---

4. We note that, since *Pak* and *City of Beverly Hills v. Guevara,* 904 S.W.2d 655, 656 (Tex. 1995) were decided, the Texas Legislature has amended Section 51.014 to allow interlocutory appeals from the granting or denial of a plea to the jurisdiction by a governmental unit. *See* Tex. Civ. Prac. & Rem.Code Ann. § 51.014(a)(8).

5. We note that the immunity granted Arkansas employees under Arkansas law does not require the negligent act to be discretionary. Under Texas law, official immunity protects a government employee from liability only when the employee is performing a discretionary duty. *Clark,* 38 S.W.3d at 580. However, the immunity granted Arkansas employees is the functional equivalent of Tex-

as official immunity despite having different elements.

6. *Hawsey v. La. Dep't of Soc. Servs.,* 934 S.W.2d 723, 727 (Tex.App.-Houston [1st Dist.] 1996, writ denied); *Bd. of County Comm'rs v. Amarillo Hosp. Dist.,* 835 S.W.2d 115, 130 (Tex.App.-Amarillo 1992, no writ); *Interfirst Bank–Houston, N.A. v. Quintana Petroleum Corp.,* 699 S.W.2d 864, 877 (Tex.App.-Houston [1st Dist.] 1985, writ ref'd n.r.e.) (citing *Nowell v. Nowell,* 408 S.W.2d 550, 553 (Tex. Civ.App.-Dallas 1966, writ dism'd)); *see Lee v. Miller County,* 800 F.2d 1372, 1376 (5th Cir. 1986); *cf. Nowell,* 408 S.W.2d at 553 ("the application of comity vests in the sound discretion of the tribunal of the forum").

on a firmer foundation than abuse of discretion. In general, we review de novo issues of law and only defer to the trial court when factual findings are at issue. *See id.* Further, choice of law issues are normally reviewed de novo.[7] The discretion in applying comity is a discretion of law rather than the discretion of the trial court. 16 Am.Jur. 2d *Conflicts of Laws* § 17 (1998). We will review de novo the trial court's decision.

## V. The Full Faith and Credit Clause Does Not Require Us To Honor Arkansas Sovereign Immunity

▆▆▆▆ The City and Greenwell argue in several places in their brief that the Full Faith and Credit Clause requires application of Arkansas sovereign immunity. The United States Constitution does place some limits on the application of Texas choice of law rules. The Full Faith and Credit Clause and the Due Process Clause require the application of the law of a state which has a "significant contact or significant aggregation of contacts, creating state interests, such that choice of its law is neither arbitrary nor fundamentally unfair." *Allstate Ins. Co. v. Hague,* 449 U.S. 302, 310–13, 101 S.Ct. 633, 66 L.Ed.2d 521 (1981); *see Phillips Petroleum Co. v. Shutts,* 472 U.S. 797, 818, 105 S.Ct. 2965, 86 L.Ed.2d 628 (1985). "The Full Faith and Credit Clause does not compel 'a state to substitute the statutes of other states

for its own statutes dealing with a subject matter concerning which it is competent to legislate.'" *Sun Oil Co. v. Wortman,* 486 U.S. 717, 722, 108 S.Ct. 2117, 100 L.Ed.2d 743 (1988). We note that the constitutional test is less stringent than the Second Restatement's "most significant contacts" test.[8] Since both Arkansas and Texas have significant contacts with the transaction in question, the Full Faith and Credit Clause does not mandate the application of either Texas law or Arkansas law.

▆▆▆▆ Further, the Full Faith and Credit Clause "does not require a state to apply foreign statutes that conditionally waive sovereign immunity, particularly when the foreign statute would produce a result 'in violation of [the forum state's] own legitimate public policy.'" *K.D.F.,* 878 S.W.2d at 593; *see Franchise Tax Bd. v. Hyatt,* 538 U.S. 488, 499, 123 S.Ct. 1683, 155 L.Ed.2d 702 (2003) (declining to engage in balancing of the States' competing sovereign interests when the forum court "sensitively applied the principles of comity with a healthy regard for [the other state's] sovereign status" and concluded that the other state's sovereign immunity statute would violate the forum state's public policy); *Hall,* 440 U.S. at 421, 99 S.Ct. 1182. While there are specific limitations on the sovereignty of the States, one State's immunity from suit in the courts of another State is nothing more than a matter of comity. *Hall,* 440 U.S. at

---

7. *Minn. Mining & Mfg. Co. v. Nishika Ltd.,* 955 S.W.2d 853, 856 (Tex.1996); *Busse v. Pac. Cattle Feeding Fund No. 1, Ltd.,* 896 S.W.2d 807, 813 (Tex.App.-Texarkana 1995, writ denied); *see Torrington Co. v. Stutzman,* 46 S.W.3d 829, 848 (Tex.2000); *Duncan v. Cessna Aircraft Co.,* 665 S.W.2d 414, 421 (Tex. 1984); *see also Huddy v. Fruehauf Corp.,* 953 F.2d 955, 956 (5th Cir.1992).

8. *Allstate,* 449 U.S. at 332, 101 S.Ct. 633. When deciding choice of law issues, Texas follows the "most significant relationship"

test embodied in the Second Restatement of Conflicts. *See Gutierrez v. Collins,* 583 S.W.2d 312, 318–19 (Tex.1979); *Duncan,* 665 S.W.2d at 421; *see also* Restatement (Second) of Conflicts §§ 6, 145, 146 (1971). We note that Davis argues the Court should apply Arkansas sovereign immunity because Davis is a citizen of Arkansas. While such an inquiry may be relevant in deciding choice of law, the only issue on appeal is whether the Arkansas statute violates Texas public policy. Davis' citizenship is irrelevant to this inquiry.

425, 99 S.Ct. 1182. While the United States Supreme Court noted that interstate comity is a principle worth promoting, it recognized that requiring the forum state to honor another state's sovereign immunity when it violates the forum state's public policy would "constitute the real intrusion on the sovereignty of the States." *Id.* at 426–27, 99 S.Ct. 1182. Therefore, if Arkansas sovereign immunity violates the public policy of Texas, the Full Faith and Credit Clause does not require Texas courts to apply the Arkansas statute.

## VI. The Arkansas Statute Does Not Violate Texas Public Policy

■ The Texas Supreme Court has held that Texas will extend comity to another state unless that state has declined to extend comity to Texas or other states under the same or similar circumstances or the extension of comity would violate Texas public policy. *K.D.F.*, 878 S.W.2d at 594–95; *State of New Mexico v. Caudle,* 108 S.W.3d 319, 321 (Tex.App.-Tyler 2002, pet. denied).

This case highlights the unique characteristics of the City of Texarkana as a community straddling the state line between Texas and Arkansas. Although one community, Texarkana consists of two separate cities located not only in separate counties, but in separate states. Each city has its own police department that enforces the separate laws of the State of

Texas or Arkansas, respectively, as well as separate city ordinances.

Although separate, the two police departments often need to cooperate in joint efforts. Indeed, the two police departments are even housed in the same building, the Bi–State Justice Building. The eastern portion of the Bi–State Justice Building is located within Arkansas, but the western portion of the Bi–State Justice Building is located within Texas. Both Texas and Arkansas have passed legislation relinquishing exclusive jurisdiction over the portion of the facility located within the respective geographical boundary of each state. Arkansas and Texas both recognize concurrent jurisdiction over the geographical areas of both states located within the Bi–State Justice Building. *See* ARK.CODE ANN. § 12–49–301 (2005); TEX. LOC. GOV'T CODE ANN. §§ 361.021–.029 (Vernon 1999). Often the police departments must aid each other in order to achieve their common goal of law and order. The unique characteristics of Texarkana often require the two departments to coordinate their activities to investigate crimes which are committed in part in Texas and in part in Arkansas.[9] Since each state is limited in making arrests within the limits of its own territorial jurisdiction, it is imperative that the police departments cooperate with each other, otherwise a person charged with a crime could avoid prosecution by merely entering the other state.[10] The need for coopera-

---

**9.** For example, a police officer pursuing an intoxicated person operating a vehicle in a reckless or dangerous manner may require the assistance of an officer of the other state if the vehicle crosses the state line. The caselaw of this Court is replete with examples of such coordination. *See, e.g., Drichas v. State,* 152 S.W.3d 630, 633 (Tex.App.-Texarkana 2004), *overruled,* 175 S.W.3d 795 (Tex.Crim. App., 2005); *Hudson v. State,* 128 S.W.3d 367, 375 (Tex.App.-Texarkana 2004, no pet.).

**10.** The United States Constitution authorizes that, in such an event a person charged in one state with a felony, who shall flee from justice and be found in another state, shall on demand of the executive authority of the state from which he fled, be delivered up, to be removed to the state having jurisdiction of the crime. U.S. CONST. art. IV, § 2, cl. 2. All of the states of the United States have enacted legislation to effect extradition procedures. *See, e.g.,* ARK.CODE. ANN. §§ 16–94–201–

tion between Texas and Arkansas in policing the streets of Texarkana heightens the desirability that the public policy of each state fosters such cooperation. When an emergency occurs which requires the coordinated efforts of police in both states, each must be prepared to act without debating which state's law governs the liability for its actions. It is in the general interest of the citizens of Texas to foster this cooperation of law enforcement officials. Doing otherwise might have a chilling effect and hamper the joint efforts of the police departments.

Since comity is grounded in cooperation and mutuality, we should extend comity if the state in question is a cooperative state and has itself extended comity and recognized the sovereignty of Texas and other states. *K.D.F.*, 878 S.W.2d at 594. In the absence of evidence to the contrary, we will treat Arkansas as a cooperative jurisdiction.[11] "There is a presumption that the sovereign states in the United States intend to adopt a policy of broad comity toward one another." *Caudle*, 108 S.W.3d at 321. Therefore, we will extend comity to the law of a cooperative jurisdiction so long as that law does not violate Texas public policy. *K.D.F.*, 878 S.W.2d at 595; *Robertson v. Estate of McKnight*, 609 S.W.2d 534, 537 (Tex.1980). The dispute in this case concerns whether the trial court erred in finding that the Arkansas sovereign immunity statute violates Texas public policy. Both Texas and Arkansas have limited waivers of sovereign immunity, but the two states differ in the extent of that waiver.

Texas courts have recognized the sovereign immunity statutes of other states when their limited waiver of sovereign immunity was greater than or identical to Texas. *K.D.F.*, 878 S.W.2d at 595–97 (Kansas sovereign immunity); *Cason*, 1997 Tex.App. LEXIS 811 (Louisiana sovereign immunity does not violate Texas public policy); *Hawsey*, 934 S.W.2d at 727 (Louisiana sovereign immunity). *But see Amarillo Hosp. Dist.*, 835 S.W.2d at 130 (refusing to grant Oklahoma hospital immunity from suit). Texas "will only refuse to enforce a foreign law which violates good morals, natural justice, or is prejudicial to the general interests of our own citizens." *Robertson*, 609 S.W.2d at 537; *see Gutierrez*, 583 S.W.2d 312.

While the issue presented here is uncommon, a very similar case has been decided by the federal courts. *Lee*, 800 F.2d 1372. In *Lee*, the Fifth Circuit held that the Texas trial court abused its discretion in refusing to extend comity. *Id.* at 1377. The facts in *Lee* showed that Miller County, Arkansas, owned a helicopter used for law enforcement and civil defense purposes. On numerous occasions, Miller County provided the helicopter, at a nominal fee, to Bowie County, Texas, for civil defense purposes. The Miller County pilot flew the helicopter to an air show in Mount Pleasant, Texas, and allowed two Texarkana, Texas, police officers, who were also serving in civil defense capacities in Texas, to ride in the helicopter. It crashed, and the officers sued Miller County, Arkansas, which invoked the sovereign immunity doctrine based on comity and other theories. *Id.* at 1373–74. In *Lee*, the invocation of Arkansas' sovereign immunity doctrine

---

231(2005); Tᴇx.Cᴏᴅᴇ Cʀɪᴍ. Pʀᴏᴄ. Aɴɴ. arts. 51.01–.14 (Vernon 1979 & Supp.2005). This process necessitates cooperation between the states.

11. *See K.D.F.*, 878 S.W.2d at 595. In addition, Arkansas appears to be a cooperative jurisdiction. *See Guardian Life Ins. Co. v. Dixon*, 152 Ark. 597, 240 S.W. 25, 29 (1922); *cf. Three Sisters Petroleum v. Langley*, 348 Ark. 167, 72 S.W.3d 95, 103 (2002).

would have resulted in complete immunity of Miller County, Arkansas, for liability for the tort claims, *id.* at 1374, whereas if Texas law applied, each person could recover a maximum of $100,000.00. *Id.* at 1376. The Fifth Circuit Court reasoned that Miller County would have been at least partially immune from liability if it had been a Texas county.[12] The Court held that, even if the county would not have been completely immune under Texas law, "it could hardly be said that extending immunity would be so at odds with Texas public policy as to be violative of 'good morals, [or] natural justice.'" *Id.* at 1377. The *Lee* opinion explained that both Texas and Arkansas continued to recognize some form of sovereign immunity and the fact that there was a different level of immunity was not so at odds with Texas public policy as to be violative of "good morals, [or] natural justice." *Id.* Further the court in *Lee* explained the need to extend comity to foster continued cooperation of the counties in different states on civil defense matters. *Id.* at 1378. We find *Lee* to be persuasive. Because both Texas and Arkansas have limited waivers of sovereign immunity, recognition of Arkansas sovereign immunity will not violate good morals or natural justice. Even though the amounts of the waivers differ, applying Arkansas' limited waiver of sovereign immunity would not be contrary to Texas public policy.[13] The mere fact that the law of the other state differs from Texas does not render it so contrary to Texas public

policy that Texas courts will refuse to enforce it. *Gutierrez*, 583 S.W.2d at 321; *see Robertson*, 609 S.W.2d at 537; *see also Delhomme Indus., Inc. v. Houston Beechcraft, Inc.*, 669 F.2d 1049, 1058 (5th Cir. 1982).

One factor that we have considered in determining whether the application of the Arkansas limited waiver of immunity law violates Texas public policy is Texas' requirements for liability insurance coverage. The Legislature has set $20,000.00 as the minimum limit of liability insurance coverage that is required in Texas. *See* TEX. TRANSP. CODE ANN. § 601.072 (Vernon 1999). We recognize this statute does not immunize drivers in Texas from amounts in excess of $20,000.00, but as a practical matter many times the limit of insurance is the limit of recovery. The fact that the public policy in the State of Texas only requires liability insurance in the minimum amount of $20,000.00 buttresses our conclusion that the application of the Arkansas sovereign immunity law is not repugnant to Texas public policy.

In *Hall*, the United States Supreme Court noted that "[i]t may be wise policy, as a matter of harmonious interstate relations, for States to accord each other immunity or to respect any established limits on liability." 440 U.S. at 426, 99 S.Ct. 1182. As previously stated, the comity doctrine is not one of right, but is extended out of deference and respect to maintain harmony and foster cooperation. It can-

---

**12.** The Fifth Circuit noted that a helicopter may not be motor-driven equipment and, therefore, sovereign immunity may not have been waived. As *Davis* correctly notes, the Texas Tort Claims Act clearly applies to automobiles. We further note that in *Lee*, the Texas Tort Claims Act only waived sovereign immunity in the amount of $100,000.00 for counties and the trial court had determined that Arkansas law should apply. *Lee*, 800 F.2d at 1376. These differences do not de-

stroy the persuasiveness of the Fifth Circuit's opinion.

**13.** We note that the Arkansas statute does not prevent the City of Texarkana, Arkansas, from increasing the level of its liability insurance coverage. Such an increase would limit or eliminate the difference in the level of potential recovery for police vehicular accidents in the two cities.

not be said that the Arkansas statutes violate good morals or natural justice. To fail to extend the Arkansas law on the basis of comity in this instance would not promote cooperation between the police forces and might hamper the forces in their mutual goals. Such a result would be detrimental to the general welfare of the citizens of Texas. Based on principles previously discussed, we conclude the Arkansas statute is not repugnant to the public policy of Texas and should be enforced.

We reverse the judgment of the trial court and remand for further proceedings consistent with this opinion.