3L 106
3pi 725

## J. NILSON TAPPAN, Trustee, etc., *v.* WESTERN & ATLANTIC RAILROAD CO. *et als.*

SISTER STATE. *Jurisdiction. Pleadings and Practice in Chancery.* A sister State cannot be sued in the courts of Tennessee without her consent. But if she appears and submits to the jurisdiction of the court, she must abide the decree made on the original or amended bill. But the charges of facts in the amended bill must be germain to and have a connection with the original bill, and must be necessary to supply some defect or failure of statement of complainant's rights as therein set forth, otherwise a demurrer will be sustained to the amended bill for want of jurisdiction.

### FROM HAMILTON.

Appeal from the Chancery Court at Chattanooga. W. M. BRADFORD, Ch.

KEY & RICHMOND and BARTON & SON for complainants.

VAN DYKE, COOKE & VAN DYKE and N. J. HAMMOND for defendants.

FREEMAN, J., delivered the opinion of the court.

The original bill, filed in October, 1876, was an attachment bill, filed against the Western and Atlantic Railroad, and Western and Atlantic Railroad Company, to enforce the collection of about $33,000, on notes alleged to have been given in 1870, by Foster Blodget, then Superintendent of the Western and Atlantic Railroad, given in the State of Georgia, to-wit, at At-

lanta, and which are assumed to have been obligations of the Railroad Company. This company is charged to have been regularly incorporated, with power to sue and be sued, and built by the State of Georgia, which is its sole owner, extending from Atlanta in said State to Chattanooga, in the State of Tennessee. The road, at the date of the notes sued on, was run and operated by the State of Georgia, as is charged, under and by her regularly authorized agents.

The Western and Atlantic Railroad Company is a corporation, different from the railroad, incorporated in 1870 or 1871, and is charged to have leased the railroad from the State of Georgia for a term of years, which lease has some years yet to run.

This Company has an agent, who represents it, in this State at Chattanooga. The Western and Atlantic Railroad has no resident agent in this State, and is charged to be a non-resident.

The bill attaches about eight acres of land of the company in the city of Chattanooga, and the road bed, right of way, and fixtures of the road for about twelve miles in this State, that is, from the Georgia State line to Chattanooga.

The assumed grounds of liability of the Railroad Company on the notes, are fully set out in the bill, which we need not go into here.

The State of Georgia, by her Governor, filed her petition in December, 1876, in which it is claimed that the entire property attached was owned solely and exclusively by the State of Georgia; that there was no such person or corporation in existence as the Western

and Atlantic Railroad, nor was there at the time of filing complainant's bill. The State asked to be allowed to become a party to said bill, and be allowed to defend, and take such steps in said cause as she should be advised might be proper in the premises, which was allowed, and the State permitted to make proper defenses to said suit, as if originally a party. Thereupon the State filed a demurrer to said bill, which on hearing by the Chancellor was overruled, and the State allowed time to file her answer.

The answer was filed 28th December, 1876, and presents an elaborate and full statement of the grounds of defense by the State to the claims of complainant, as set out in the bill.

On the 22d of January after this, complainant asked leave to file an amended bill, which on being read in open court, was allowed by the Chancellor.

To this amended bill a demurrer was filed by the State of Georgia, and Western and Atlantic Railroad Company, which was sustained by the Chancellor, and the same dismissed; from which decree the complainants appeal to this court.

The only question now before us, is the correctness of this decree dismissing the amended bill.

The amended bill, after reciting the substance of the charges of the original bill, the fact that the State of Georgia had been allowed to appear and defend the same, the filing of an answer by the State, giving its substance, then proceeds to state, that the complainant is owner of a large amount of bonds issued by the State of Georgia, and others, on which the State was

liable as guarantor for various railroad companies in said State. A portion of these bonds are alleged to have been issued to raise money for building the Western and Atlantic Railroad, in pursuance of statutes of the State, and negotiated in the market for this purpose, and are said to have been signed by the then Governor of the State, and also by the President of the Board of Commissioners for the construction of said road. These bonds are called "scrip," or "stock," or bonds of the State of Georgia, but as they are not set out, their precise form we are unable to see, except that they were signed by the President of the said Board of Commissioners. It is claimed that the money received for these bonds was used to build said road, and on this is based the conclusion, that in equity complainant has a lien on the road, it having been built, says the bill, with the money arising from the sale of the bonds.

It is also claimed the Western and Atlantic Railroad is also liable for these bonds, because of the signature of the same by the President of the Board of Commissioners.

There are other allegations in the bill, but the above statement is sufficient to raise the questions now to be decided between the State of Georgia and complainant, and the Western and Atlantic Railroad Company, the lessee of said road, these being the only parties before us on the appeal. It is proper to say, that no additional matter is alleged against the lessee, nor is any relief prayed against that company in the amended bill.

The State of Georgia assigns for cause of demurrer, the following: "Said bill on its face shows the State of Georgia is one of the Sovereign States of the United States of America, and is not liable or subject to be sued, arraigned or impleaded in the courts of Tennessee, and therefore insists she is not bound to submit to the jurisdiction sought to be exercised." This is formally stated in said demurrer, but the above is the real point of defense.

The question raised is one largely dependent, on the facts in the record, that is, whether the matter of the amended bill can be treated or adjudged to be matter of amendment to the original bill, in any proper legal sense, on sound principles of law. The State of Georgia having voluntarily appeared and submitted to the jurisdiction of the court for the defense of her assumed claim to the property attached under the original bill, would, on well-settled principles, be bound to submit to all proper matters of adjudication involved in that litigation, in favor of complainant. Any amendments necessary to supply defects in statement of facts germain to and appropriate to sustain the claims asserted in the original bill, would become a part of that case, and she be held to meet such matter. It could not be maintained, that a State, after becoming a party to a suit, could insist that the pleadings should not be so amended, that the rights of the complainant could be properly and fully presented for the adjudication of the court. All the rights of the complainant in the way of amendment necessary to the complete and full development

of the claim asserted in the original bill certainly remain to him, after the intervention of the State of Georgia, as fully and completely as if the suit had been between citizen and citizen. This we think all very clear.

But the question is, whether the charges of fact in the amended bill are germain to, or have any connection whatever with the matter of the original bill, so as to be legitimate matter of amendment to the same, or are in any way necessary or even proper in order to supply any defect or failure of statement of complainant's rights as therein set forth?

While it is true, as said by this court in the case of *Bradley* v. *Dibbrell*, 3 Heis., 524, "the original and amended bill are to be taken as one when relating to the same subject matter," yet the statement of the rule implies the principle that underlies what is appropriate matter of amendment, that is, that it be something having connection with and germain to the matter of the original bill.

Tested by this principle, it is clear that the liabilities of the Sovereign State of Georgia on her bonds issued probably thirty years since, or on guaranties of like bonds of later date, bear no possible relation to the matter involved in the original bill, to-wit, liability on promissory notes issued by Blodget, as superintendent of the Western and Atlantic Railroad in 1870. This is especially so in view of the fact charged in said bill, that put the complainant's case largely on the ground that Henry Clews & Co. (whose trustee complainant is), were purchasers for value before due,

and therefore the notes were not subject to equities in their hands, with other matters peculiar to the case of said notes. In any event it is beyond question, the matter of the amended bill, so far as the State of Georgia is concerned, as a sovereign State, is not matter of amendment to the matter of the original bill, but is matter of an independent character, which may or may not be fit for an original bill. If we should sustain the view of complainant in this case, it would involve the proposition, that you might sue a party in this State on one case, and if a State chose to intervene to defend her right in property sought to be appropriated, as she assumed wrongfully, thereby the complainant secured the right to sue the State on all her outstanding bonds, be they much or little. In the aspect in which this case stood at the time of filing this amendment, this would be a fraud and surprise on the State, which no court could encourage or tolerate. The State of Georgia simply intervened to defend her claim of right to protect property attached, in which she claimed to have exclusive ownership, she had filed an answer making issues on the rights put in issue by complainant. Thereupon complainant stands in the attitude of saying, it may be the original cause of suit cannot be maintained, but I find I have another case on which I may be successful, and the State being in court to try the matter of the original claim, must submit to be sued to any extent desirable.

It is hardly necessary to cite authorities in support of the proposition, that a State of this Union, is as

Tappan *v.* Railroad Co.

to any other State a foreign and independent government; whether sovereign in the fullest sense of the term, we do not stop to inquire. No State can be sued in its own courts, except by its consent, and certainly cannot be impleaded in a foreign State, against its consent. These are axiomatic princiles of jurisprudence, about which there can be no doubt or debate.

It is proper to say, that we do not deem it necessary to examine the able and ingenious argument of the learned counsel, based on the distinction between a State in its governmental character, and that of a State engaged in commercial or trading transactions. The learning on these questions would be interesting, but the application of the distinctions presented is not seen, as the case stands before us. The State of Georgia is sued simply on its bonds, as a State, and on its guaranty of bonds issued by Railroads within her borders, in pursuance of authority granted by the Legislature. She comes before the court solely and alone, in her capacity as a State, and pleads to the jurisdiction of our courts over her as an independent State. That plea has been sustained, and we are asked to reverse this, and hold that she, as a State, may be sued in our courts. This we cannot do, without overturning, or disregarding principles long established, and so well-grounded in reason and the philosophy of the law, as to be impregnable to attack. We hold, the court below ruled correctly and affirm his judgment.

The decree is equally correct as to the Western and Atlantic Railroad Company. There is no ground

8—VOL. 3.

assumed in the amended bill, on which any liability in connection with these bonds can by possibility attach to this company, nor is there any prayer for relief against the company touching any of these bonds; and even if this might possibly be made out, it would not be pertinent to or germain to the matter of the original litigation, and ought not to be complicated with it.

What, if any, may be the rights of complainant against the Western and Atlantic Railroad, in an independent suit brought upon the liability of said road, based on the assumed signature of the President of the Board of Commissioners of Construction, we need not enquire, as that matter is not before us. We only decide the matters arising on the demurrer of the State of Georgia, as such State, and of the other company. These are the only matters presented for adjudication on this record. For these, and other reasons that might be given, we affirm the decree of the Chancellor dsmissing the amended bill with costs.