# UNITED STATES GYPSUM CO. v. AMERICAN SURETY CO. OF NEW YORK.

Western Section. December 16, 1931.

Petition for Certiorari denied by Supreme Court, March 26, 1932.

Fitzhugh, Murrah & Fitzhugh, of Memphis, for appellant.
Wilson, Kyser, Armstrong & Allen, for appellee.

HEISKELL, J. This suit involves the following alleged state of facts. The complainant, United States Gypsum Company, sold to Kaucher-Hodges & Company, general contractors, who were then engaged in the construction of the Tivoli Hotel at Biloxi, Mississippi, fifty-eight tons of a roof insulation material called pyrocell for the sum of $1269. This material was sold to the general contractor on the faith of a contractor's bond, executed by the defendant, the American Surety Company, a solvent and nationally known concern, as surety. The pyrocell was received by Kaucher-Hodges & Company in good order during the month of November, 1926, and applied to the hotel roof. Kaucher-Hodges & Company made no payment whatsoever on the contract price of the pyrocell, and went into bankruptcy within a few months after completion of the building. Complainant thereupon brought this suit, against the American Surety Company, a New York corporation, doing business and maintaining an office in Shelby County, Tennessee, upon the contractor's bond, executed to the hotel company, which under the statutory laws of the State of Mississippi, inured to the benefit of the complainant and of any and all furnishers of material and labor on said building. No lien against the realty is sought and no attachment is prayed for. The suit is for a money judgment in an action ex contractu against

the surety on the contractor's bond. Personal service of process was had upon the defendant by service upon the manager of its office in Memphis, Shelby County, Tennessee, who is also a resident vice-president of defendant company.

Defendant filed a plea in abatement to the original bill, averring that since the hotel company was a non-resident of the State of Tennessee with its hotel building located in Mississippi, the contract sued on was to be performed in that state, and since the remedy for breach of contract was sought to be enforced under a Mississippi statute, the Chancery Court of Shelby County had no jurisdiction to determine the rights of the parties under said contract. Simultaneously with the filing of its plea in abatement, defendant filed an answer, in which it admitted the execution of the bond and of the contract for pyrocell, but denied the other material allegations in the bill and denied that it was indebted to complainant in any amount on account of said contract or bond.

The Chancellor sustained defendant's plea in abatement, holding that although the statute "giving the claimant a right of action against the surety does not in so many words provide that the action on the bond can be maintained only in the county in which the building is erected, yet this is clearly implied." The Chancellor further held complainant had failed to sustain its contentions on the merits of the case, in that the pyrocell did not dry quick enough for the application of a tar roof which was to be applied on top of it; that complainant's recovery would therefore be limited to $69.50, even if it were entitled to recover anything on the bond, as the general contractor had to expend $1199.10 in remedying the defect. From this decree complainant has appealed and assigned errors.

The first assignment of error is that the court erred in sustaining defendant's plea in abatement. It is the contention of complainant that this is a suit for breach of contract; that such an action is always transitory and follows the person of the defendant. The brief of counsel for complainant contains this:

"The complainant, a corporation of the State of Illinois, sued the defendant, the surety on the contractor's bond, who agreed in said bond to save harmless all furnishers of material to the contractor. The contractor and principal on the bond, a Tennessee partnership, had gone into bankruptcy a few months after the completion of the job. Personal service of process was had upon the defendant surety company, which is a New York corporation, doing business in Tennessee and maintaining an office and agency in this State. This suit was brought under a Mississippi statute, which provided that such a contractor's bond as the one sued upon inured to the benefit of all furnishers of

material and labor. The statute made no provision that the suit would have to be brought in Mississippi, but in fact expressly and broadly provided that 'any person supplying therein labor or materials shall have a right of action on said bond for his use and benefit against said contractors and the sureties thereon.''

The plea in abatement sets out the portions of the Act of 1918 considered material and insists that the contracts for construction of said hotel were Mississippi contracts and the bond a statutory bond, could be sued on only in the courts of that State. That inasmuch as complainant relies upon said Act of 1918 for his right of action, that he must bring suit in the manner and place contemplated by said statute and that the present suit is not so brought.

A court of equity can and will go far in enforcing the contract rights of one litigant against another where the question involved is merely a personal matter between the two. Nothing is farther from the scope of a court of equity's jurisdiction than to deal with real property in another State. Yet if the court has jurisdiction of the party who has by binding contract in writing contracted to convey real property in another State, he may be compelled to execute the deed by a decree in personam to be enforced by process of contempt. But here the court is dealing with the right of one party to have another do a particular thing. The right and the remedy are not complicated by the rights or interests of others. The cases cited by counsel for complainant Mattix v. Swepston, 127 Tenn., 683, 157 S. W., 64, and Anderson-Tully v. Thompson, 132 Tenn., 80, 177 S. W., 66, go no further than this. They recognize the authority of a court of equity in this State by an in personam decree to enforce a liability which accrued in another State, provided the decree does not affect rights, parties and interests not before the court in personam. No stronger illustration of this jurisdiction can be imagined than the one with which we started out, that in which a court of equity in this State by a decree in personam compels the transfer of title to land in another state. The question is in the present case, does the statute of Mississippi invoked by complainant as creating his right of action, so complicate the remedy as to justify the Chancellor in refusing to entertain this suit.

Counsel for complainant does not controvert the holding of U. S. v. McCord, 233 U. S., 157, that where a statute creates a new liability or gives a special remedy, the remedy must be enforced in exact compliance with the statute. It is insisted that the statute has been complied with. This presents two questions: (1) Could this statute be complied with except by a suit in Mississippi in the County of the contract? (2) If it could be by a suit in another state, does the present suit so comply? The statute provides that if the

general contractor furnishes a contractor's bond to the owner, the same shall inure to the benefit of his sub-contractor, and that his sub-contractor shall have the right to intervene and be made a party to any action instituted on the bond and to have his rights adjudged therein, subject, however, to the priorities of the rights of the obligee, the owner, and that if the amount of the surety's liability is insufficient to pay all claims and demands, that then the rights of sub-contractors shall be subordinate to the rights of the owner thereunder, and after satisfying the full amount due the owner, the balance shall be prorated among the intervenors. Only one action shall be brought on the bond. The surety may pay into court the amount of its liability, less any amount theretofore paid to the obligee, and be released from further liability. The bond is to be made by a surety company authorized to do business in the State of Mississippi. The constitutionality of this statute in creating the right invoked by complainant in the present case, was attacked in the case of United States Fidelity & Guaranty Co. v. Parsons, 112 So., 469, and its constitutionality was sustained by the Supreme Court of Mississippi as a valid exercise of the police power of the state to regulate building contracts with respect to the improvement of lands within the State. The court said:

"The real question here presented is whether or not under the Fourteenth Amendment, the state is authorized, under its police power, to regulate building contracts with the manifest and obvious purpose of protecting therein the class denominated as materialmen and laborers."

The Federal Act involved in U. S. v. McCord, 233 U. S., 157, 58 L. Ed., 893, is very much like this Mississippi statute and in holding that to take advantage of the right therein provided, a claimant must comply strictly with the statute, the court said:

"By this statute a right upon the bond is created in favor of certain creditors of the contractor. The cause of action did not exist before and is the creature of the statute. The act does not place a limitation upon a cause of action theretofore existing, but it creates a new one upon the terms named in the statute. The right of action given to creditors is specifically conditioned upon the fact that no suit shall be brought by the United States within six months named, for it is only in that event that the creditor shall have a right of action and may bring a suit in the manner provided. The statute thus creates a new liability and gives a special remedy for it. And upon well settled principles, the limitations upon such liability become a part of the right conferred and compliance with them is made essential to the assertion and benefit of the liability itself."

When we consider that this statute created a new right and remedy which the complainant is seeking to take advantage of, and therefore is under obligation to comply with and follow the statute; that the statute is only constitutional as an exercise of the police power of the state in regard to building upon property within the state; that the purpose of the statute is to have the rights of all parties settled in one suit, with priority in the owner as to right to sue and to satisfaction out of the bond, it is scarcely credible that it should have been contemplated that the material man should have the right to sue in Maine or Texas or California—anywhere an agent of the bonding company can be found and make his suit the one suit permitted by the Mississippi statute. To require the owner living in Biloxi, without notice, to come into the distant jurisdiction or be barred. This cannot be the meaning of the act and to so construe it might work great confusion and great injustice. Such a construction would not be comity.

Both parties in the present case cite and rely upon Brower v. Watson, 146 Tenn., 627, 244 S. W., 362. What was actually decided in that case is stated thus: "An action against a sheriff of a county in Mississippi on his official bond, which was by code of Mississippi made payable to the State, for a cause of action in such state cannot be maintained in Tennessee by a resident of Mississippi." This cannot help either party and can have little application to the present case, but both parties find passages in the opinion from which they take comfort. So far as there is anything favorable to the right of complainant to maintain the present suit, the opinion goes no further than the cases of Anderson-Tully v. Thompson and Mattix v. Swepston, supra, no further than the rule we have already conceded, but there are some things in the opinion which have some bearing in favor of the plea in abatement in the present case. The court holds that the statute involved is not a penal statute, but the case comes under the rule "that no court will take cognizance of a matter which concerns the internal police regulations of another state." The opinion quotes at great length from Pickering v. Fisk, 6 Vt., 102, and that court uses this language:

"What we decide is this. When an official bond is by the law of the state where it is executed, to have effect only in a particular way and to be enforced only in a particular mode pointed out by those laws, the enforcing of it in that mode is the exclusive province of the tribunals of that State."

It is true in the Vermont case as in the Brower case the bond was of an official, but in the present case we have a bond against which complainant would have no right but for the statute, unconstitutional except as an exercise of the police power of the state in the regula-

tion of its internal affairs, with regard to improving real property within the state, and declaring rights, penalties and mode of procedure impracticable to be observed in another and distant state. Railroad v. Sprayberry, 8 Bax., 341; Whitlow v. N. C. & St. L. Ry., 114 Tenn., 344, 84 S. W., 618; Bank of Columbia v. Walker, 14 Lea, 299; Illinois Central v. Ihlenberg, 75 Fed., 873; are all cases of individual liability involving no question of police power or polity of another state, no rights of others, and no statutory procedure peculiarly adapted to the situs of the contract and of the building and the residence of the owner. The authority of all these is unquestioned, but they do not apply in the present case.

Counsel for complainant rely very strongly upon Kirtley v. Holmes, 107 Fed., 1, an appeal from the Circuit Court of the U. S. for the District of Kentucky to the U. S. Circuit Court of Appeals. A short statement of that case shows that it is easily distinguished from the present case. Quoting from the statement of the case in the opinion: "This case originated in the attempt of John R. Holmes, a receiver appointed for the purpose of collecting the stockholders liability of the Commercial Bank of Cincinnati, an insolvent corporation, to enforce the liability alleged to have been incurred by one John M. Kirtley, as a stockholder of said bank." The statement then sets out at length the steps taken by court proceedings in Ohio to wind up this insolvent bank in which the Ohio court found it necessary to collect the full amount due from each stockholder. The statement then continues:

"An assessment was made and judgment rendered accordingly. Among other stockholders the court undertook to adjudge that Elizabeth M. Kirtley and Jerry H. Kirtley as administrator and administratrix of the estate of John M. Kirtley, deceased, should be assessed in the sum of $6457 and the parties held liable were ordered to pay their several assessments within thirty days to the receiver and this further order was made: 'Upon motion of the plaintiff and the cross-petitioner herein the court doth hereby appoint John R. Holmes, receiver herein and does authorize and direct said John R. Holmes as such receiver to collect and receive from the defendants the amounts assessed against them and to take all steps that may be necessary for that purpose including the employment of counsel, the commencement of actions in this or any other court whenever it may be necessary to make collections, as well from the defendants herein as from those who are not within the jurisdiction of the court . . .'"

In pursuance of this authority from the Ohio court, Holmes as receiver, instituted this suit in Kentucky, setting out the foregoing

facts alleging the liability of John M. Kirtley on 120 shares of stock and seeking to subject certain real property in Kentucky belonging to his estate. John M. Kirtley was during his life a resident of Kentucky. The administration on his estate was in that state. That was the residence of the administratrix and the location of the real estate.

It was held ''that it was within the power of the Ohio court to authorize its receiver to bring suits against stockholders domiciled in other jurisdictions and that a federal court in another jurisdiction should, on the principle of comity, recognize his right to maintain an action therein in behalf of all creditors to enforce the liability of a stockholder domiciled within its jurisdiction to an amount proportionate to that which domestic stockholders have been required to pay.''

In short, the Ohio court had held it necessary to collect the whole amount due from all stockholders in order to settle the liabilities of the insolvent bank, and had adjudged the amounts due from stockholders. It appointed a receiver to collect and as he could not collect in Ohio from a Kentucky stockholder, the Ohio court instructed its receiver to sue if necessary in other jurisdictions. The suit could not be brought in Ohio or anywhere but in Kentucky, and the result was to make the Kentucky stockholder exactly equal in liability with the Ohio stockholder. There was nothing in the action of the court in Kentucky that could possibly be objected to by any one in Ohio or acting under the law of that State. That was a very different case from the present. The Federal Court in Kentucky said the case should be entertained on the principle of comity. This word is used so often in the cases cited in the present case and in argument, that it may be well to recall the exact meaning attached to the word by the courts:

''It answers with courts and cabinets, in law and diplomacy substantially the same purpose which personal courtesies serve in social relations.'' U. S. v. Martin (D. C. Pa.), 227 F., 314.

''It contributes to produce kindly intercourse between States.'' Franzen v. Zimmer, 35 N. Y. Supp., 612, 90 Hum., 103.

It means courtesy, deference, good will. It perhaps would not be inapt to say it means the golden rule as applied between states. Considering the states as personalties, it means that one state will do in regard to the laws of another state that which if the conditions were reversed, it would like for the other state to do in regard to its laws.

If the cases are examined in which the courts have based their decisions upon the doctrine of comity, it will be found that the courts have endeavored to carry out the idea involved in the word.

If in the present case a suit has been pending at Biloxi to wind up

this controversy and adjust the rights and liabilities of all parties interested in this contract and this bond, and it had been found necessary to enforce a liability against some one living in Tennessee who could not be sued in Mississippi, and a receiver had been appointed and instructed to sue in Tennessee, then we would have a case like the Kirtley v. Holmes case in which the Tennessee court might well say if the position of the states were reversed, Tennessee would want a Mississippi court to entertain the suit arising under Tennessee law, but we do not think this idea can be applied in the present case. It would not be consistent with courtesy to entertain this suit.

Complainant insists that it is not shown that he could sue in Mississippi, in that it is not shown that the surety company could be served with process in that state. If complainant is seeking to justify his right to sue elsewhere, perhaps the burden is upon him to show that he could not sue in Mississippi, but aside from this, the statute in question expressly provides that the bond is to be made by a surety company authorized to do business in the State and therefore subject to service of process therein and this liability to service continues as long as liability on the bond.

We find no error in the decree of the Chancellor in sustaining the plea in abatement and dismissing the bill, therefore this assignment is overruled and the decree of the lower court is affirmed. Having reached this conclusion, we consider it unnecessary to consider the merits of the case as the bill would stand dismissed, whatever our conclusion might be as to the merits. The complainant will pay the costs of appeal.

Owen and Senter, JJ., concur.