IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
October 9, 2018 Session

## VICKI L. MOBLEY, ET AL. v. STATE OF ARKANSAS, ET AL.

Appeal from the Circuit Court for Shelby County
No. CT-000941-17     Felicia Corbin Johnson, Judge

_____

### No. W2017-02356-COA-R3-CV
_____

This appeal involves an Arkansas plaintiff who was involved in an auto accident on a bridge between Arkansas and Tennessee with another vehicle operated by an employee of the State of Arkansas. The Arkansas plaintiff and her husband filed this personal injury suit in the circuit court of Shelby County, Tennessee, naming as defendants the State of Arkansas, the Arkansas State Highway and Transportation Department, and the Arkansas state employee who was operating the other vehicle. The defendants moved to dismiss on numerous grounds, including sovereign immunity and the discretionary principle of comity. The Tennessee Attorney General filed an amicus brief on behalf of the Tennessee Department of Transportation asking the trial court to extend comity to the Arkansas defendants and dismiss the action against them. After two hearings, the trial court granted the defendants' motion to dismiss on the basis of comity. Discerning no error, we affirm the decision of the circuit court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed and Remanded**

BRANDON O. GIBSON, J., delivered the opinion of the court, in which J. STEVEN STAFFORD, P.J., W.S., and ARNOLD B. GOLDIN, J., joined.

William Lewis Jenkins, Jr., and Dean Powell Dedmon, Dyersburg, Tennessee, for the appellants, Vicki L. Mobley and Charles Mobley.

Vincent P. France, Assistant Attorney General of the State of Arkansas, and Justin Lynn Jones and Samantha A. Lunn, Chattanooga, Tennessee, for the appellees, State of Arkansas, Arkansas State Highway and Transportation Department, and Anthony Maurice James.

**OPINION**

## I. FACTS & PROCEDURAL HISTORY

Vicki Mobley and her husband Charles Mobley filed this suit for negligence and personal injuries in the circuit court of Shelby County, Tennessee. According to their complaint, the Mobleys are citizens and residents of the State of Arkansas. The complaint alleges that Mrs. Mobley was driving her vehicle on Interstate 40 across the Hernando Desoto Bridge, which spans from Tennessee to Arkansas, when she struck a stationary vehicle that belonged to the Arkansas State Highway and Transportation Department (and/or the State of Arkansas) and was operated by Arkansas state employee Anthony Maurice James. The complaint alleges that the stationary vehicle was parked in a lane of travel on the bridge within the geographic boundary of the State of Tennessee and that the state employee was apparently repairing signage belonging to the State of Arkansas or the Arkansas State Highway and Transportation Department. The complaint alleges that the state employee was acting in the course and scope of his employment and failed to utilize any warning signs, cones, emergency lighting, or "emergency parts and accessories" to warn approaching motorists of his vehicle, nor did he have the signage on his truck illuminated. The plaintiffs alleged that the Arkansas state employee was negligent or reckless and violated numerous Tennessee statutes, and they sought a judgment against the defendants for $1,500,000.

The Assistant Attorney General for the State of Arkansas filed a motion to dismiss on behalf of the three Arkansas defendants. Among other things, the defendants asserted that dismissal was proper either because of sovereign immunity or under the discretionary principle of comity.[1] The defendants submitted documentation reflecting that each of the plaintiffs had already filed claims regarding this accident with the Arkansas State Claims Commission. They also attached to their motion an "Interagency Memorandum of Understanding" between the Tennessee Department of Safety and the Tennessee Department of Transportation and the Arkansas State Highway and Transportation Department, which, the defendants argued, was meant to address "this exact situation" involving a highway incident on the bridge. The stated purpose of the Interagency Memorandum was to facilitate joint efforts toward alleviating problems associated with roadway incidents and emphasize the urgent and safe clearance of incidents on or around the Mississippi River bridges connecting Tennessee and Arkansas. It provided that if an agency or employee of one state was sued in the other state for a course of action arising from the cooperation of state agencies or employees on or around the bridges, then both states would request either dismissal of the out-of-state defendant or application of the privileges and immunities of the out-of-state defendant's home state.

---

[1] "'Comity' means that courts of one state may, out of respect and the need for interstate harmony, defer to the decisions of the courts of another state or extend immunity to another state out of deference to the foreign state's laws, even when not required to do so by the Full Faith and Credit Clause of the United States Constitution." *Lemons v. Cloer*, 206 S.W.3d 60, 69 (Tenn. Ct. App. 2006).

The Mobleys filed a response in which they argued that Arkansas was not entitled to assert sovereign immunity in the courts of its sister states, according to controlling United States Supreme Court precedent. Regarding the principle of comity, the plaintiffs argued that the trial court should refuse to consider any matters outside the pleadings, such as the Interagency Memorandum of Understanding, because the defendants made the decision to pursue a motion to dismiss pursuant to Rule 12 of the Tennessee Rules of Civil Procedure. However, even if the Interagency Memorandum was considered, the Mobleys argued that the complaint did not contain sufficient information about the purpose of the state employee's presence on the bridge in order to determine whether he would be covered by the Memorandum. The Mobleys argued that the fact that they were Arkansas residents was irrelevant to the jurisdictional issues before the court and asked the court to focus on the fact that an Arkansas state employee caused an injury to a person inside the State of Tennessee.

The defendants filed a reply asserting that their Rule 12 motion was brought pursuant to Rule 12.02(1), presenting a factual challenge to the trial court's subject matter jurisdiction, and therefore, the trial court could properly consider matters outside the pleadings.

The trial judge held a hearing on the motion to dismiss. The Arkansas Assistant Attorney General explained that Arkansas has a Claims Commission and governing statutes that are very similar to the system utilized in Tennessee (with the exception that Arkansas does not have a cap on damages).[2] Noting that the Mobleys had an available forum in Arkansas, he asked the trial court to recognize the sovereign immunity of the State of Arkansas and dismiss this action based on the principle of comity.

In response, the Mobleys acknowledged that their claims were still pending before the Arkansas State Claims Commission. Still, they maintained that Arkansas was not *entitled* to assert sovereign immunity in the courts of sister states, and they also asked the court to decline to recognize its sovereign immunity under the discretionary principle of comity. The Mobleys also argued that the Interagency Memorandum was inapplicable by its terms based on the facts alleged in the complaint.

The trial judge noted that the Interagency Memorandum provided that *both* states would request dismissal or ask for application of the privileges and immunities of the out-of-state defendant's home state in the event of litigation. The trial judge raised concerns about the implications of her decision for the State of Tennessee in future cases involving

---

[2] *See* Ark. Code Ann. § 19-10-201 (creating the "Arkansas State Claims Commission"). The Arkansas State Claims Commission has "exclusive jurisdiction over all claims against the State of Arkansas and its several agencies, departments, and institutions." Ark. Code Ann. § 19-10-204(a). It has jurisdiction "over those claims which are barred by the doctrine of sovereign immunity from being litigated in a court of general jurisdiction." *Id.* § 19-10-204(b)(2)(A).

the Interagency Memorandum. She ultimately decided to defer a decision on the motion to dismiss until the Tennessee Attorney General was provided with formal notice of the proceeding and given the opportunity to participate.

After the hearing, the defendants filed a supplemental brief along with additional exhibits. The defendants submitted an affidavit from the Arkansas State Highway and Transportation Department employee who was driving the vehicle parked on the bridge. In the affidavit, the employee stated that on the date of the accident, he received a call indicating that a sign was blocking the inside lane of westbound travel on Interstate 40 on the Hernando Desoto Bridge. The employee stated that when he arrived on the scene, he saw that a construction sign that was bolted to the center median had broken due to a bolt coming loose and allowing the sign to swing out into the lane of traffic. He stated that the sign posed a real danger because it was essentially debris in the middle of the traffic lane hanging at the same level of a car windshield. Based on this affidavit, the defendants claimed that the Interagency Memorandum was applicable, as it referenced "incidents" such as "crashes, stalled vehicles, debris, special events, [and] road work," and they asked the trial court to dismiss the suit based on the agreement and principles of comity.

The Office of the Tennessee Attorney General and Reporter filed an "amicus memorandum" on behalf of the Tennessee Department of Transportation. The Tennessee Attorney General took the position that the Interagency Memorandum regarding the clearance of roadway incidents on the bridge was applicable to the facts of this case as they were described in the affidavit of the Arkansas state employee. The memorandum submitted by TDOT states that the loose sign posed "an unanticipated danger" to traffic on the bridge that required "a quick response" in order "to prevent potentially disastrous consequences." According to the memorandum, these were the type of circumstances in which the states had agreed to cooperate. As a result, TDOT requested that the trial court dismiss the lawsuit against the Arkansas defendants. However, TDOT clarified that its request was "not merely to conform to the terms of the [Interagency Memorandum]," but also under the common law principle of comity. TDOT explained that comity is grounded in cooperation and mutuality out of deference and respect to sister states. It explained that "Arkansas has adopted a cooperative posture vis-à-vis its sister States" and noted that a federal district court in Arkansas had previously extended comity to Tennessee in order to promote the harmonious relationship between the two states. *See Harris v. City of Memphis*, 119 F.Supp.2d 893 (E.D. Ark. 2000). TDOT suggested that granting comity to Arkansas in this case would increase the likelihood of Arkansas and other sister states extending comity to Tennessee.

After another hearing, the trial court entered an order granting the Arkansas defendants' motion to dismiss, referencing Tennessee Rule of Civil Procedure 12.02(1). The trial court based its dismissal on two alternative grounds—the Interagency Memorandum between the states and "the common law principles of comity." First,

- 4 -

regarding the Interagency Memorandum, the trial court found that it addressed incidents on bridges such as stalled vehicles, debris, special events, or road work, and that this language encompassed situations like the one presented in this case, which would pose a safety hazard and impact traffic flow. As a result, the court found that dismissal was appropriate pursuant to the Interagency Memorandum. Alternatively, however, the trial court stated that even if the Interagency Memorandum did not exist or apply, dismissal was appropriate based on the common law principles of comity. The court noted that comity had been extended to the State of Tennessee in the past and that the court did not desire to impede the ability of these two states to work together when these situations arise. Lastly, the trial court noted that the Mobleys had another forum available in Arkansas for the resolution of their claims. For these reasons, the trial court dismissed the Mobleys' lawsuit with prejudice. The Mobleys timely filed a notice of appeal to this Court.

## II. ISSUES PRESENTED

The parties present the following issues, as we perceive them, for review on appeal:

1. Whether the Arkansas defendants were entitled to sovereign immunity such that the trial court lacked subject matter jurisdiction; and
2. Whether the trial court erred in dismissing the case based on the discretionary principle of comity.

For the following reasons, we affirm the decision of the circuit court and remand for further proceedings.

## III. DISCUSSION

### A. Lack of Jurisdiction due to Sovereign Immunity

At the outset, we address the Arkansas defendants' argument that "the doctrine of interstate sovereign immunity requires that the lawsuit be dismissed against the State of Arkansas and its agents." According to the Arkansas defendants, "sovereign immunity barred the trial court from being able to hear the case based upon principles of the United States Constitution as well as common law principles of sovereignty."

Subject matter jurisdiction and sovereign immunity "are two different legal concepts[.]" *Colonial Pipeline Co. v. Morgan*, 263 S.W.3d 827, 851 (Tenn. 2008). However, courts may lack subject matter jurisdiction because of the doctrine of sovereign immunity. *Id.* "'[S]overeign immunity is jurisdictional immunity from suit,'" which "'acts as a jurisdictional bar to an action against the state by precluding a court from exercising subject-matter jurisdiction.'" *Id.* (quoting 81A Am. Jur. 2d *States* § 534

- 5 -

(2004)). "The doctrine of sovereign immunity divests the courts of subject matter jurisdiction[.]" *White v. State ex rel. Armstrong*, No. M1999-00713-COA-R3-CV, 2001 WL 134601, at *3 (Tenn. Ct. App. Feb. 16, 2001). Thus, we treat the Arkansas defendants' motion to dismiss based on sovereign immunity as a challenge to subject matter jurisdiction. *See Arnold v. Oglesby*, No. M2017-00808-COA-R3-CV, 2017 WL 5634249, at *1 (Tenn. Ct. App. Nov. 22, 2017) *perm. app. denied* (Tenn. Feb. 14, 2018); *Smith v. Tenn. Nat'l Guard*, 387 S.W.3d 570, 572 (Tenn. Ct. App. 2012).

The trial court's order of dismissal did not expressly analyze the issue of subject matter jurisdiction, ruling instead that dismissal was warranted because comity should be extended to the Arkansas defendants. Both parties have briefed the issue of sovereign immunity as it relates to subject matter jurisdiction on appeal, with the Arkansas defendants arguing that jurisdiction does not exist and the Mobleys arguing that it does. Because "issues regarding a court's subject matter jurisdiction should be considered as a threshold inquiry," *In re Estate of Trigg*, 368 S.W.3d 483, 489 (Tenn. 2012), we begin with consideration of that issue.

Tennessee courts draw a distinction "between facial and factual challenges to subject matter jurisdiction." *Church of God in Christ, Inc. v. L. M. Haley Ministries, Inc.*, 531 S.W.3d 146, 159 (Tenn. 2017). A facial challenge to subject matter jurisdiction is "a challenge to the complaint itself." *Redwing v. Catholic Bishop for Diocese of Memphis*, 363 S.W.3d 436, 445 (Tenn. 2012). It "asserts that the complaint, considered as a whole, fails to allege facts showing that the court has subject matter jurisdiction to hear the case." *Church of God in Christ*, 531 S.W.3d at 160. Accordingly, when evaluating a facial challenge, we limit our consideration to the factual allegations of the complaint and consider nothing else, utilizing the familiar framework that applies to motions to dismiss for failure to state a claim. *Id.* We simply presume that the factual allegations of the complaint are true and determine whether those facts establish a basis for the court's exercise of subject matter jurisdiction. *Id.*

A factual challenge to subject matter jurisdiction, on the other hand, does not attack the allegations of the complaint as insufficient but rather "'denies that the court actually has subject matter jurisdiction as a matter of fact even though the complaint alleges facts tending to show jurisdiction.'" *Redwing*, 363 S.W.3d at 446 (quoting *Staats v. McKinnon*, 206 S.W.3d 532, 543 (Tenn. Ct. App. 2006)). It attacks the facts that serve as the basis for jurisdiction. *Id.* When evaluating a factual attack, we may consider matters outside the pleadings such as affidavits and other documents. *Church of God in Christ*, 531 S.W.3d at 160. However, "motions challenging subject matter jurisdiction are not converted to summary judgment motions when matters outside the pleadings are considered or when disputes of material fact exist." *Id.* (citing *Anderson v. Watchtower Bible and Tract Soc'y of N.Y., Inc.*, No. M2004-01066-COA-R9-CV, 2007 WL 161035, at *32 n.23 (Tenn. Ct. App. Jan. 19, 2007)). The court "must weigh the evidence, resolve any factual disputes, and determine whether subject matter jurisdiction exists." *Id.*

"[T]he burden is on the plaintiff to demonstrate that the court has jurisdiction to adjudicate the claim." *Redwing*, 363 S.W.3d at 445. Here, the Arkansas defendants moved to dismiss on the basis of sovereign immunity, pointing to the facts that were alleged in the complaint—both plaintiffs were citizens of Arkansas, and the three defendants were the Arkansas Highway and Transportation Department (described in the complaint as a governmental entity of the State of Arkansas), a state employee of the Department (also said to be a resident of Arkansas), and the State of Arkansas itself. Referencing "[t]he suability of a state," the defendants asserted that they had not waived their right to sovereign immunity and were therefore entitled to dismissal. Essentially, the Arkansas defendants asserted that even if the facts alleged in the complaint were true, Tennessee's courts were without subject matter jurisdiction to adjudicate claims against them. Accordingly, their challenge to the trial court's subject matter jurisdiction was facial.[3] *See Redwing*, 363 S.W.3d at 445-46.

The landmark decision from the United States Supreme Court addressing the sovereign immunity of states in the courts of sister states is *Nevada v. Hall*, 440 U.S. 410 (1979). In *Hall*, the plaintiffs were California residents who were injured in an automobile accident in California with another driver who was an employee of the University of Nevada driving a state-owned vehicle on official business. *Id.* at 411. The California plaintiffs filed suit in California and ultimately obtained a judgment against the State of Nevada. *Id.* The United States Supreme Court granted certiorari to decide whether *federal law* prohibited California courts from asserting jurisdiction over another sovereign State. *Id.* The Court noted that it had not previously addressed the important question of "whether a State may claim immunity from suit in the courts of another State," and nothing in the United States Constitution or federal statutes expressly answered the question. *Id.* at 414 & n.5. Nevada argued that the question was "implicitly answered" by the "common understanding" that a sovereign is not amenable to suit without its consent. *Id.* at 414. However, the Court proceeded to determine "whether that understanding is embodied in the Constitution." *Id.*

Looking first to the source and scope of the traditional doctrine of sovereign immunity, the Court explained,

> The doctrine of sovereign immunity is an amalgam of two quite different concepts, one applicable to suits in the sovereign's own courts and the other to suits in the courts of another sovereign.

> The immunity of a truly independent sovereign from suit in its own courts has been enjoyed as a matter of absolute right for centuries. Only the sovereign's own consent could qualify the absolute character of that

---

[3] The documents that were attached to the motion to dismiss were relevant to the defendants' comity argument, which is discussed in the following section of this opinion.

immunity.

. . . .

        Mr. Chief Justice Jay described sovereignty as the "right to govern"; that kind of right would necessarily encompass the right to determine what suits may be brought in the sovereign's own courts. Thus, Mr. Justice Holmes explained sovereign immunity as based "on the logical and practical ground that there can be no legal right as against the authority that makes the law on which the right depends."

        This explanation adequately supports the conclusion that no sovereign may be sued in its own courts without its consent, but it affords no support for *a claim of immunity in another sovereign's courts*. Such a claim necessarily implicates the power and authority of a second sovereign; *its source must be found either in an agreement, express or implied, between the two sovereigns, or in the voluntary decision of the second to respect the dignity of the first as a matter of comity*.

*Id.* at 414-416 (footnotes omitted) (emphasis added).

        Next, the Court considered the impact of the sovereign immunity doctrine on the framing of the Constitution. *Id.* at 414. The Supreme Court recognized that sovereign immunity was "[u]nquestionably . . . a matter of importance in the early days of independence" but said that the question of "whether one State might be subject to suit in the courts of another State was apparently not a matter of concern when the new Constitution was being drafted and ratified." *Id.* at 418-19. The Court explained that the need for *constitutional* protection against such suits was not discussed, as the framers "presumably" had assumed "that prevailing notions of comity would provide adequate protection against the unlikely prospect of an attempt by the courts of one State to assert jurisdiction over another[.]" *Id.* at 419.

        After reviewing other aspects of the Constitution in search of a "mandate for federal-court enforcement of interstate comity," the Court found no implication "that any one State's immunity from suit in the courts of another State is anything other than a matter of comity." *Id.* at 421, 425. In conclusion, the Court stated,

        In the past, this Court has presumed that the States intended to adopt policies of broad comity toward one another. But this presumption reflected an understanding of state policy, rather than a constitutional command. . . .

. . . .

It may be wise policy, as a matter of harmonious interstate relations, for States to accord each other immunity or to respect any established limits on liability. They are free to do so. But if a federal court were to hold, by inference from the structure of our Constitution and nothing else, that California is not free in this case to enforce its policy of full compensation, that holding would constitute the real intrusion on the sovereignty of the States—and the power of the people—in our Union.

*Id.* at 425-27.

In their brief on appeal, the Arkansas defendants acknowledge that their claim of sovereign immunity was "based on principles of the United States Constitution as well as common law principles of sovereignty." Based on the Supreme Court's decision in *Hall* addressing these very issues, we reject the Arkansas defendants' assertion that they were *entitled* to assert sovereign immunity in Tennessee courts. The defendants argue that *Hall* has "waning precedential value" and "has been called into question in recent years," and they suggest that it may be overturned in the near future. However, the fact remains that it has not been overturned as of the date of this opinion. *See, e.g.*, *Catholic Diocese of Arlington Virginia v. Com. Transp. Comm'r*, 74 Va. Cir. 154, 2007 WL 5961975, at*1 (Va. Cir. Ct. 2007) ("Maryland presents a spirited argument that *Nevada v. Hall* should be overruled. Whatever the merits of that argument—and Maryland may well be right that *Hall* would not come out the same way today as it did in 1979—this Court is bound by that decision until the Supreme Court tells it otherwise.") As the Mobleys aptly noted in their reply brief, "If *Nevada v. Hall* later is overturned, the State of Arkansas [could] raise that issue when it becomes an issue; but for now, the law as it is should guide the decision in this case."[4]

Next, the Arkansas defendants argue that they were entitled to assert sovereign immunity in Tennessee courts based on Tennessee caselaw regarding interstate sovereign immunity. For instance, they rely on *Tappan v. Western & Atlantic Railroad Co.*, 71 Tenn. 106 (1879), a case decided by the Tennessee Supreme Court a century before the United States Supreme Court decided *Hall*. In *Tappan*, the State of Georgia moved to dismiss a suit on the basis that "the State of Georgia is one of the Sovereign States of the United States of America, and is not liable or subject to be sued, arraigned or impleaded in the courts of Tennessee, and therefore insists she is not bound to submit to the jurisdiction sought to be exercised." *Id.* at 110 (internal quotation marks omitted). The

---

[4] In *Franchise Tax Bd. of California v. Hyatt*, 136 S. Ct. 1277, 1279 (2016), the Supreme Court was equally divided 4-4 as to whether *Nevada v. Hall* should be overruled. After the decision on remand, the Supreme Court granted another petition for writ of certiorari, 138 S.Ct. 2710, and the case remains pending before the Court. Indiana and 43 other states have filed a brief as amici curiae urging the Court to overturn *Nevada v. Hall*. 2018 WL 4583704.

Tennessee Supreme Court affirmed dismissal, stating,

> It is hardly necessary to cite authorities in support of the proposition, that a State of this Union, is as to any other State a foreign and independent government; whether sovereign in the fullest sense of the term, we do not stop to inquire. No State can be sued in its own courts, except by its consent, and certainly can not be impleaded in a foreign State, against its consent. These are axiomatic principles of jurisprudence, about which there can be no doubt or debate.

*Id.* at 112-13. The Tennessee Supreme Court went on to say that it could not hold that Georgia could be sued in Tennessee courts "without overturning, or disregarding principles long established, and so well-grounded in reason and the philosophy of the law, as to be impregnable to attack." *Id.* at 113.

Although the Tennessee Supreme Court did not specify the precise source of these unspecified principles, we believe that they were grounded in federal constitutional law or the traditional notions of sovereign immunity discussed at length by the United States Supreme Court in *Hall*. As the Supreme Court of Delaware succinctly explained,

> For almost two hundred years, it had been assumed that the United States Constitution implicitly prohibited one state from being sued in the courts of another state—just as the Eleventh Amendment explicitly prohibited states from being sued in federal courts. That implicit assumption was based on the theory that interstate immunity was an attribute of state sovereignty that had been reserved to the states in the United States Constitution. In 1979, when it decided *Hall*, the United States Supreme Court held that assumption was unwarranted.

*Kent Cty., State of Md. v. Shepherd*, 713 A.2d 290, 297 (Del. 1998) (footnotes omitted); *see also* Ann Woolhandler, *Interstate Sovereign Immunity*, 2006 Sup. Ct. Rev. 249, 252, 276 (2006) (explaining that "both federal and state courts proceeded on assumptions of interstate sovereign immunity for 180 years--until *Hall*" and noting that the Tennessee Supreme Court in *Tappan* had "manifested the same working assumption as the federal courts that constitutional and general law immunity principles prevented states from being made involuntary parties in suits in other states"). Notably, the Arkansas defendants do not point to any specific aspect of Tennessee law pursuant to which they would be entitled to sovereign immunity independent of these sources. As a result, we conclude that *Hall* is controlling as to this issue rather than *Tappan*.

Pursuant to the *Hall* decision, the Arkansas defendants had no absolute right to assert sovereign immunity in the courts of this State. Consequently, the trial court did not lack subject matter jurisdiction on the basis of sovereign immunity.

- 10 -

### B. *Discretionary Dismissal on the Basis of Comity*

Next, we address the issue of comity, which served as the basis for the trial court's decision to decline to exercise its jurisdiction and instead dismiss the suit against the Arkansas defendants.[5] In *Nevada v. Hall*, the Supreme Court stated that a state's claim of immunity in another sovereign's courts "necessarily implicates the power and authority of a second sovereign," and therefore, "its source must be found *either* in an agreement, express or implied, between the two sovereigns, *or* in the voluntary decision of the second to respect the dignity of the first as a matter of comity." 440 U.S. at 416 (emphasis added); *see also Alden v. Maine*, 527 U.S. 706, 749 (1999) ("the immunity of one sovereign in the courts of another has often depended in part on comity or agreement").

In the case before us, the Arkansas defendants asserted immunity under both options—citing the agreement between the two states expressed in the Interagency Memorandum and also seeking comity under common law principles. And, the trial court granted the motion to dismiss on both alternative bases, finding the Interagency Memorandum applicable, but at the same time, holding that dismissal was appropriate under common law principles of comity regardless of the existence or applicability of the Interagency Memorandum.

On appeal, the Mobleys argue that the trial court should not have considered the Interagency Memorandum and should not have found it applicable to these facts. However, we conclude that dismissal of the Arkansas defendants was proper under common law principles of comity based on the allegations of the complaint and do not reach the issue of the Interagency Memorandum.

Even if it is not constitutionally mandated, Tennessee retains the discretion to decline to exercise jurisdiction over this suit as a matter of comity. "At bottom, comity is about one sovereign respecting the dignity of another." *Michigan v. Bay Mills Indian Cmty.*, 572 U.S. 782, 817 (2014) (Thomas, J., dissenting). This Court has described comity as "the golden rule as applied between states," meaning that "one state will do in regard to the laws of another state that which if the conditions were reversed, it would like for the other state to do in regard to its laws." *U.S. Gypsum Co. v. Am. Sur. Co. of N.Y.*, 14 Tenn. App. 367, 373 (1931). Whether to grant comity in a given situation is "purely a question of Tennessee law." *Hyde v. Hyde*, 562 S.W.2d 194, 198 (Tenn. 1978). "[C]omity is a discretionary doctrine and may be granted or withheld depending on the

---

[5] It is important to "distinguish the concepts of lack of subject matter jurisdiction and declining to exercise jurisdiction based on principles of comity." *Levert v. Univ. of Ill. at Urbana/Champaign ex rel. Bd. of Trustees*, 857 So. 2d 611, 617 (La. Ct. App. 2003).

particular facts, laws and policies present in an individual case."[6] *Id.* However, Tennessee courts will not extend comity if it would violate the public policy of this State. *Id.*; *see also In re Conservatorship of Clayton*, 914 S.W.2d 84, 92 (Tenn. Ct. App. 1995).

Again, in *Nevada v. Hall*, the Supreme Court said that it had historically "presumed that the States intended to adopt policies of broad comity toward one another" as a matter of state policy. *Nevada v. Hall,* 440 U.S. at 425. The Court added, "It may be wise policy, as a matter of harmonious interstate relations, for States to accord each other immunity or to respect any established limits on liability. They are free to do so." *Id.* at 426. Clearly, the Court "encouraged" but did not compel the states to accord deference to each other as a matter of comity. *McDonnell v. State of Ill.*, 748 A.2d 1105, 1106 (N.J. 2000); *see also Montaño v. Frezza*, 393 P.3d 700, 703 (N.M. 2017) ("The United States Supreme Court has long referred to a broad presumption of comity between the states[.]"); *Greenwell v. Davis*, 180 S.W.3d 287, 297 (Tex. Ct. App. 2005) ("There is a presumption that the sovereign states in the United States intend to adopt a policy of broad comity toward one another.") (internal quotation marks omitted).

We extended comity to recognize the governmental immunity of the State of Georgia in *Lemons v. Cloer*, 206 S.W.3d 60, 69 (Tenn. Ct. App. 2006), a case involving a Georgia school bus crash just over the Tennessee state line. We said,

> "Comity" means that courts of one state may, out of respect and the need for interstate harmony, defer to the decisions of the courts of another

---

[6] Some courts hold that the extension of comity is a matter within the discretion of each trial judge. *See, e.g.*, *Levert*, 857 So.2d at 618 (La. Ct. App. 2003) ("the decision to extend comity rests in the sound discretion of the trial court"); *Univ. of Iowa Press v. Urrea*, 440 S.E.2d 203, 204 (Ga. Ct. App. 1993). Others recognize that comity is a discretionary principle but review a comity decision on appeal either de novo or under a mixed standard of review. *See, e.g.*, *Montaño v. Frezza*, 393 P.3d 700, 704 (N.M. 2017) ("We apply a mixed standard of review to questions of comity. While a district court's decision to extend comity in a given case is subject to de novo review, we also analyze any fact-intensive aspects of the district court's comity analysis under a more deferential abuse of discretion standard."); *Atl. Coast Conference v. Univ. of Maryland*, 751 S.E.2d 612, 618 (N.C. App. 2013) ("while the decision as to whether comity should be extended in any given case has been assigned to the discretion of our courts as a general matter, it does not follow that our courts should leave each comity decision to the sound discretion of the trial judge"); *Greenwell v. Davis*, 180 S.W.3d 287, 294-95 (Tex. Ct. App. 2005) (declining to defer to trial courts' discretion on matters involving relations between Texas and other sovereigns and concluding that a de novo standard of review "rests on a firmer foundation"). According to the Texas Court, "'The discretion in applying comity is a discretion of law rather than the discretion of the trial court.'" *Id.* at 295 (quoting 16 Am. Jur. 2d *Conflicts of Laws* § 17 (1998)).

It is not necessary for us to adopt one or the other approach in this case because we would affirm the trial court's decision under either an abuse of discretion or a de novo standard.

state or extend immunity to another state out of deference to the foreign state's laws, even when not required to do so by the Full Faith and Credit Clause of the United States Constitution. *See Nevada v. Hall*, 440 U.S. 410, 426, 99 S.Ct. 1182, 1191, 59 L.Ed.2d 416 (1979) ("It may be wise policy, as a matter of harmonious interstate relations, for States to accord each other immunity or to respect any established limits on liability."). "[W]here the law of another jurisdiction is applicable, Tennessee will enforce the substantive rights which litigants have under the laws of the other jurisdiction if such rights are not contrary to the policy of Tennessee." *Hyde v. Hyde*, 562 S.W.2d 194, 196 (Tenn. 1978). The public policy of a state is found in its constitution, statutes, and court decisions. *Id.* In the instant case, it is clear that Georgia's law with respect to waiver of immunity is completely in harmony with the public policy of Tennessee.

*Id.*

The Sixth Circuit has also observed that "[w]hile Tennessee has no constitutional obligation to recognize the sovereign immunity that a sister state may have granted to a citizen, *see Nevada v. Hall*, 440 U.S. 410, 426–27 [] (1979), Tennessee courts choose to do so, in their discretion, in the interest of comity and state harmony." *Town of Smyrna, Tenn. v. Mun. Gas Auth. of Ga.*, 723 F.3d 640, 647 (6th Cir. 2013) (concluding that Tennessee would apply Georgia sovereign immunity law as a matter of comity). Citing the *Lemons* decision, the Sixth Circuit explained that "Tennessee will enforce a sister state's sovereign immunity to a defendant state entity so long as the other state's rules are not 'contrary to the policy of Tennessee,' as found in its constitution, statutes, and court decisions." *Id.* (quoting *Lemons*, 206 S.W.3d at 69).

Finally, we note that a federal district court in the State of Arkansas extended comity and immunity to a Tennessee municipality in another case involving an auto accident on a bridge between the two states. *Harris v. City of Memphis, Tenn.*, 119 F. Supp. 2d 893, 897 (E.D. Ark. 2000). The district court found that Arkansas and Tennessee statutes were similar with respect to immunity and observed that "the harmonious relationship between the two states would not be enhanced if this Court were to ignore the immunity granted under Tennessee law simply because the accident occurred a few yards on this side of the state line." *Id.* at 896.

Here, the Mobleys are asking the State of Tennessee to resolve a case involving two Arkansas plaintiffs and three Arkansas defendants. In response, the Arkansas defendants have asked Tennessee's courts to recognize their sovereign immunity and decline to exercise jurisdiction over this action. The defendants have the better argument with respect to this issue. Even though this accident allegedly occurred on "the Tennessee side" of the bridge, Tennessee has little interest in litigating this dispute involving only Arkansas parties. To use the words from *Hall*, it would be "wise policy,

- 13 -

as a matter of harmonious interstate relations," 440 U.S. at 426, to accord immunity to the Arkansas defendants under these circumstances. The common law principles of comity dictate that this dispute should be resolved by the available tribunal in Arkansas. Sovereignty law in Arkansas is sufficiently aligned with the law in Tennessee such that its application does not violate the public policy of Tennessee. *Compare Greenwell*, 180 S.W.3d at 291 (Tex. Ct. App. 2005) ("Given the policy of promoting amicable relationships by recognizing a sister state's law, the extent of the difference in the laws is not so contrary to Texas public policy that we should refuse to enforce the Arkansas law.") In fact, the only difference in the laws that the parties to this case have mentioned is the existence of a damage cap in Tennessee while Arkansas has none.

We also recognize that Tennessee has an interest in extending immunity by comity in order to encourage Arkansas and other states to extend immunity to Tennessee in the future. *See, e.g., Sam v. Sam*, 134 P.3d 761, 767 (N.M. 2006) (recognizing that "other states will likely consider our decisional law on the subject of comity" and "may be reluctant to extend immunity to our state if we have previously declined to extend immunity to a sister state"); *Greenwell*, 180 S.W.3d at 292 ("under the doctrine of comity, Texas will recognize the laws of other states with the expectation that those states will extend Texas the same consideration"); *Levert*, 857 So.2d at 622 ("By extending comity to a sister state, other states will be more likely to honor Louisiana's sovereign immunity laws when litigation arises within their forums in the future.") We therefore affirm the trial court's decision to decline to exercise its jurisdiction based on the principle of comity.

## IV. CONCLUSION

For the aforementioned reasons, we affirm the decision of the circuit court. Costs of this appeal are taxed to the appellants, Vicki and Charles Mobley, for which execution may issue if necessary.

_____
BRANDON O. GIBSON, JUDGE